483 A.2d 929

**Lynne BLINKOFF, Appellant,**

v.

**Barry BLINKOFF.**

Superior Court of Pennsylvania.

Argued July 24, 1984.

Filed Oct. 26, 1984.

William P. James, Philadelphia, for appellant.

Catherine M. Baggiano, Philadelphia, for appellee.

Before CIRILLO, MONTEMURO and CERCONE, JJ.

CERCONE, Judge:

This appeal on jurisdictional grounds only, is from an order which modified appellee-father's visitations and rejected his request that appellant-mother be held in contempt for violation of a visitation order. Because we find that the trial court was without jurisdiction to modify the pre-existing order, we reverse.

A review of the history of this case is necessary. The parties were married in 1970; three children were born to them: Jason, born June 21, 1971, and Saul and Rena, twins born November 7, 1972. The couple and Jason lived in Philadelphia until the middle of 1972, when they moved to Cherry Hill, New Jersey. In 1976 appellant-mother moved with the three children back to Philadelphia. A decree in divorce was entered by a New Jersey court on May 25, 1976.

On November 21, 1978, appellant-mother sought child support from their father in the Court of Common Pleas of Philadelphia County and an order was entered for support.

On January 5, 1981, appellant-mother, after her marriage to Aaron Lantz, moved with the children to Woodmere, Long Island, New York. On March 4, 1982, appellee-father filed a petition with the Philadelphia court seeking child visitation and an order was entered on June 18, 1982 on visitation. On December 24, 1982, the father filed a petition to hold the mother in contempt for failure to abide by the visitation order.

Then, on September 19, 1983, at a pre-trial conference, the mother challenged the jurisdiction of the Pennsylvania courts to rule on the subject of visitation. The court requested that the parties outline their respective positions in letters directed to the court. On November 15, 1983, the court wrote to counsel that it had decided "under the totality of the circumstances" that it had jurisdiction to decide the contempt and visitation issues. A hearing was scheduled for November 23, 1983, at which time the mother renewed her objections to the court's jurisdiction by notifying the court that written preliminary objections would be filed. An interim visitation schedule was agreed to by the parties.

The court declined the mother's request for a hearing on the jurisdiction issue and entered an order on December 20, 1983, to-wit:

"AND NOW, this 20th day of December, 1983, the issue of jurisdiction of this Court having already been decided based upon a review of the record as agreed by counsel for both parties we find that the preliminary objections of plaintiff, Lynn Blinkoff (now Lantz) to this Court's jurisdiction are moot.

Further, upon consideration of all other facts and circumstances, we find said preliminary objections to be untimely and without merit.

Accordingly, it is hereby ORDERED and DECREED that said preliminary objections be and are hereby Overruled. The hearing fixed for January 4, 1984 shall proceed as scheduled.

The parties next appeared before the trial court on February 22, 1984, for a hearing on the father's petition for contempt and the mother's petition to increase support. Counsel for the mother again objected to the court's jurisdiction and informed the court that, inasmuch as there existed disputed issues of fact and a material change of circumstances, an evidentiary hearing was necessary on the question of jurisdiction. The court then agreed to receive testimony on the question of jurisdiction in a reconsideration of its December 20, 1983 order. The parties presented testimony and on March 19, 1984, the court issued an order reaffirming its earlier order dismissing appellant's jurisdictional objections. In addition, the court found that the mother was not in contempt of the earlier visitation order and in that same order modified the father's visitation. The mother now appeals only the court's assertion of jurisdiction in this matter.

Initially we must confront appellee's petition to quash this appeal as untimely. He asserts that the appeal should have been taken from the December 20, 1983, order by which the trial court found the mother's preliminary objections on the basis of jurisdiction were "moot," "untimely," and "without merit". He cites *Provident National Bank v. Rooklin*, 250 Pa.Superior Ct. 194, 378 A.2d 893 (1977), in which this court stated the rule regarding petitions for reconsideration and their inability to toll the period within which an appeal should be taken. *See* Pa.R.A.P. 1701(b)(3). However, appellee does not address the non-appealability of the dismissal of preliminary objections. *Matter of Phillips*, 471 Pa. 289, 370 A.2d 307 (1977). It would have been premature for appellant to have appealed the denial of her preliminary objections relating to subject matter jurisdiction prior to a determination by the trial court of the merits of the visitation petition. Moreover, challenges to subject matter jurisdiction may never be considered as waived. *Marcus v. Diulus*, 242 Pa.Superior Ct. 151, 363 A.2d 1205 (1976). Thus, given the peculiar circum-

stances of this case, the appeal was timely as from the trial court's order of March 19, 1984, and it shall be considered on the merits.

The Uniform Child Custody Jurisdiction Act, 42 Pa.C.S.A. § 5341, *et seq.*, governs this case.[1] The general purposes of the Act include, at § 5342(a)(3), to:

Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this Commonwealth decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

Appellant argues that the underlying course of events in this case has deprived the Pennsylvania courts of subject matter jurisdiction and that the courts of New York should preside over the visitation problems of the parties.

The Act provides three major bases for jurisdiction. Section 5344 provides that a court of this Commonwealth has jurisdiction to make a child custody determination by initial or modification decree if, *inter alia,* § 5344(a)(1) this Commonwealth is the home state of the child at the time the proceeding was commenced. "Home state" is defined as the state in which the child immediately preceding the time involved lived with his or her parents for at least six consecutive months. In this case, it appears that Pennsylvania may not be considered "home state" since the children had moved to Long Island fourteen months prior to the father's filing of a petition for shared custody/visitation on March 4, 1982. Section 5344(a)(3) is not relevant to our consideration.

However, as the mother argues, § 5344(a)(2) supplies another basis for jurisdiction, and it is within these parame-

---

1. The definition of "custody determination," 42 Pa.C.S.A. § 5343, includes within it that pertaining to visitation rights, as in this case.

ters that the mother urges that New York is now the proper jurisdictional forum.

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationships of the child;

This jurisdictional basis has been described as premised on "significant contacts" among the various parties to the custody action and the locale in which the action has been brought. *Hattoum v. Hattoum*, 295 Pa.Superior Ct. 169, 174, 441 A.2d 403, 405 (1982).

The evidence elicited at the hearing established that the children and mother, having moved from Pennsylvania, have lived in Woodmere, Long Island, New York since January 5, 1981. The father has not lived in Pennsylvania since 1972 and his connection with this state is centered in the fact that approximately half of his working hours as a medical doctor are spent here. The children do attend a summer camp in the Pocono Mountains in Pennsylvania and they visit the mother's parents and other relatives who live near Philadelphia in Pennsylvania. The father also points out that Jason was to celebrate his bar mitzvah in a Philadelphia synagogue this year and that he has taken Rena to an eye doctor in Philadelphia.

However these contacts with Pennsylvania are overshadowed by the extent to which the children have become relocated in their new community in the state of New York. And it is the best interest of the children involved that is paramount in any custody issue. *Tettis v. Boyum*, 317 Pa.Superior Ct. 8, 463 A.2d 1056 (1983). Jurisdiction founded upon the "significant contacts" principle,

among parties to a custody action cannot be assumed without it first appearing that no other state could have assumed jurisdiction under the prerequisites substantially in accordance with the Pennsylvania statute. *Id.*

The children themselves consider Woodmere their home now, as the in-chambers interview reveals. They attend synagogue and school there, including Hebrew school three days a week. All of the children's friends are in New York. They participate in sports and take music lessons in their New York neighborhood. This court's review of the record leads to the conclusion that nearly all of the children's major involvements are centered in the state of New York now, despite the assertions of the father. Not only do the children lack a significant connection with Pennsylvania, but the evidence concerning their present or future care, protection, training, and personal relationships in this Commonwealth is meager. Thus, the requirements of the Uniform Child Custody Jurisdiction Act have not been satisfied and Pennsylvania does not possess subject-matter jurisdiction over this dispute.[2]

Under these circumstances, we hold that the trial court properly ruled on the father's contempt petition under its enforcement jurisdiction, but that it did not possess subject-matter jurisdiction to modify the existing visitation order.[3] Accordingly, the order of the court is reversed as to that modification. Jurisdiction is not retained.

2. Regardless of our decision on the court's power to modify the existing visitation order, as our court has had occasion to state recently, "[t]here can be no question that courts have the inherent power to enforce compliance with their lawful orders through civil contempt." *Commonwealth ex rel. Taylor v. Taylor,* 332 Pa.Superior Ct. 67, 480 A.2d 1188 (1984). (citations omitted.) Thus, the trial court had the power to decide the contempt issue on the part of the mother, as part of its enforcement jurisdiction.

3. We believe that a full determination of the best interests of the children in this case should be commenced, as needed, in New York, the state with proper jurisdiction, to modify the June 18, 1982 order concerning visitation.

Our decision today does not affect the jurisdiction of the trial court regarding issues of child support which may be pending. *Commonwealth ex rel. Jones v. Jones,* 272 Pa.Superior Ct. 417, 416 A.2d 526 (1979).