**Pennsylvania BOARD OF PROBATION & PAROLE, DEPARTMENT OF CORRECTIONS, Appellees.**

Supreme Court of Pennsylvania.

Feb. 22, 2001.

No. 5 W.D. Appeal Docket 2001.

### ORDER

PER CURIAM:

**AND NOW,** this 22nd day of February, 2001, probable jurisdiction is noted and the order appealed is affirmed. The Application For An Immediate Hearing is dismissed as moot.

**Mark J. CONWAY and Mollie M. Conway, Individually and as Parents and Natural Guardians of Madison C. Conway, a minor, Petitioners,**

v.

**Amy YAVOREK, and Ob–Gyn Consultants, Ltd., Respondents.**

Supreme Court of Pennsylvania.

Feb. 28, 2001.

### ORDER

PER CURIAM:

**AND NOW,** this 28th day of February, 2001, the Petition For Allowance of Appeal is GRANTED and this matter is VACATED and REMANDED to the Superior Court for further consideration in light of this Court's decision in *Fancsali v. University Health Center,* 761 A.2d 1159 (Pa. 2000).

**Cynthia L. KRIEBEL, now Cynthia A. Lundeen, Appellant**

v.

**Gary A. KRIEBEL, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 20, 2000.
Filed Dec. 22, 2000.
Reargument Denied March 2, 2001.

Serena M. Williams, Pittsburgh, for appellant.

Joanne R. Wilder, Pittsburgh, for appellee.

Before POPOVICH, FORD ELLIOTT and BECK, JJ.

BECK, J.:

¶ 1 This appeal requires a determination of whether Pennsylvania currently has jurisdiction over custody determinations involving the parties and their children. Under the Uniform Child Custody Jurisdiction Act, 23 Pa.C.S.A. §§ 5341–5366 (UCCJA), we find that although Pennsylvania had initial jurisdiction, this state does not have continuing jurisdiction because the children no longer have significant connections with this Commonwealth.

¶ 2 Appellant Cynthia L. Kriebel (Mother) and Appellee Gary A. Kriebel (Father) married in July 1980. They separated in May 1993 and divorced in July 1997. They are the parents of three children born in 1983, 1985 and 1989. After the parties' separation, they agreed that the children would reside with Mother and Father would have partial custody.

¶ 3 On May 12, 1994, Mother filed a complaint in divorce in Pennsylvania including a claim for custody. In November 1994, Father agreed that Mother could move with the children to North Carolina. A consent order, drafted by Mother's counsel, permitting the relocation and setting out certain economic terms was approved by the trial court and entered as its order. Two and one half years later in May of 1997, Father filed a Motion for a Custody Conciliation Conference.

¶ 4 On June 12, 1997, Mother filed a complaint for child custody in North Carolina. In Pennsylvania she filed Preliminary Objections to Father's motion for a Custody Consolidation Conference asserting that Pennsylvania lacked subject matter jurisdiction to decide Father's petition under the UCCJA. On July 10, 1997, in the Pennsylvania action the parties agreed to an Interim Custody Order setting the terms of Father's partial custody. The order preserved each party's right to challenge jurisdiction and, for enforcement purposes, was entered in the courts of both states.

¶ 5 In May 1998, Father again filed in Pennsylvania a Petition for Special Relief as to custody. Mother then petitioned in Pennsylvania to schedule argument on her objection to jurisdiction in response to Father's motion for a Custody Conciliation Conference filed in 1997. Prior to the hearing, the Honorable Paul B. Greiner, discussed the matter with his North Carolina counterpart, Judge Joseph Buckner. They agreed the custody hearing would proceed in Pennsylvania but the question of jurisdiction would remain open. At the hearing, a partial custody order was entered and argument was heard on the jurisdiction issue. On June 12, 1998, the court overruled Mother's preliminary objections as to jurisdiction and held that "continuing jurisdiction" remained in Pennsylvania on the basis, *inter alia*, of Father's and the children's significant contacts in the state.

¶ 6 On June 30, 1998, Mother filed a Motion to Modify Custody in North Carolina. Judge Buckner refused to consider the motion unless Pennsylvania relinquished jurisdiction. He affirmed that Judge Greiner's order of June 5, 1998, was entitled to full faith and credit in North Carolina. Mother appealed the North Carolina order in North Carolina.

¶ 7 While her appeal was pending, Father filed a Motion for a Custody Hearing in Pennsylvania. The hearing was scheduled for June 29, 1999. On June 17, 1999, the North Carolina Court of Appeals vacated Judge Buckner's order and remanded the case for reexamination of the jurisdictional issue in light of *Potter v. Potter,* 131 N.C.App. 1, 505 S.E.2d 147 (1998), a case interpreting the Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A (PKPA), and North Carolina's version of the UCCJA. Mother immediately filed a Motion for Continuance of the custody conference scheduled for June 29th in Pennsylvania. On June 25, 1999, the North Carolina District Court held that North Carolina had jurisdiction over custody. On June 29, 1999, after argument, Judge Greiner denied Mother's request for a continuance, found that Pennsylvania continued to have jurisdiction, and, in the absence of Mother's counsel, established Father's partial custody schedule. Mother appeals from the court order incorporating those rulings.

¶ 8 On appeal Mother presents five questions. The gravamen of her first three issues is that the trial court abused its discretion in finding that Pennsylvania could exercise jurisdiction over custody when North Carolina had validly asserted jurisdiction.[1] Her remaining issues are:

---

1. Specifically, Mother's first three questions are:

   Whether following only oral argument, the Court abused its discretion in denying Mother's Motion for Stay and Continuance in direct contravention of the UCCJA and the Federal PKPA, not only based on the facts of this case, but after it was advised of and presented with a certified copy of the Findings of Fact and Order of Court dated June 25, 1999 entered by the presiding District Court Judge of the General Court of Justice, District Court Division, County of Orange, State of North Carolina, at Case Number 97 CVD 826, identical caption and parties, which Order confirmed custody jurisdiction with the State of North Carolina, the Court holding that "North Carolina has jurisdiction over all questions of child custody and visitation in this matter"?

   Whether the Lower Court abused its discretion in making its finding, stated in (1)

   above, after it was advised of the fact that above-referenced Order was entered pursuant to a remand Order of the North Carolina Court of Appeals, dated June 1, 1999, with the direction that "on remand the trial court shall reexamine the threshold issue of whether North Carolina has the authority to exercise jurisdiction ... and shall make findings of fact and conclusions of law in support of its determination" and given that said Appellate Order found that it was uncontroverted that North Carolina was the "home state" of the children?

   Whether the Lower Court abused its discretion by failing to give the North Carolina Order of June 25, 1999 full faith and credit pursuant to the UCCJA and PKPA, by failing to follow the procedures outlined in the UCCJA for situations where simultaneous proceedings are pending in different states and by refusing to stay and continue the Clarion County, Pennsylvania proceedings

Whether the Lower Court erred in proceeding immediately following the jurisdiction argument to a custody hearing, on Appellee's request for partial custody and making a substantive Order, in the absence of Appellant and/or her counsel?

Whether the Lower Court abused its discretion entering its Order contrary to the "best interests" standard of Pennsylvania and without full knowledge of the facts of the case, necessary to enter such an Order?

Appellant's Brief at 6.

¶ 9 Our standard of review of a trial court decision to exercise or decline jurisdiction in a matter involving interstate custody issues is abuse of discretion. *Van Dyke v. Van Dyke*, 722 A.2d 725 (Pa.Super.1998). An abuse of discretion occurs only when there is an error in judgment, a misapplication of the law or when there is insufficient evidence of record to support the trial court's findings. *O'Callaghan v. O'Callaghan*, 530 Pa. 176, 607 A.2d 735 (1992).

¶ 10 In her first three issues, Mother asserts that the exercise of jurisdiction by the Pennsylvania trial court violated both the UCCJA and the PKPA by not recognizing the primacy of home state jurisdiction and by failing to give full faith and credit to the North Carolina order. She claims that when she filed her custody complaint in North Carolina in 1997, a custody determination had never been made in Pennsylvania. Accordingly, she argues that, as the children's home state, North Carolina properly had initial jurisdiction over child custody and has continu-

pending any discussion with the North Carolina Court and/or immediately relinquishing jurisdiction to the Court of appropriate jurisdiction, thus resulting in significant prejudice to Appellant?
Appellant's Brief at 6.

2. A relocation order approved and entered by the court, whether arrived at by settlement of the parties or by decision of the court, is a "custody determination" providing instructions as to the custody of a child. *See* 23

ing jurisdiction on the same basis. In the alternative, she argues that North Carolina is also the appropriate jurisdiction under the significant connections test of the UCCJA and the Pennsylvania court erred in finding to the contrary. Father counters that the 1994 order permitting Mother and the children to relocate was a custody determination and, as the children's home state at the time, Pennsylvania had initial jurisdiction in this case. He claims that Pennsylvania retains jurisdiction because he resides here and the children have significant connections to the state.

¶ 11 We find Mother is incorrect in asserting that North Carolina had initial jurisdiction. It is clear that the Pennsylvania court when it approved the parties' relocation agreement in 1994 and issued an order pursuant thereto was properly exercising its jurisdiction.[2] At the time the order was issued the thee Kreibel children and their parents lived in Pennsylvania. Pennsylvania was the children's home state. Therefore, Pennsylvania was the state of initial jurisdiction.

¶ 12 We turn then to the critical question in this case: whether Pennsylvania continues to have jurisdiction over custody matters pertaining to the Kreibel children.

¶ 13 Where more than one state asserts jurisdiction, we must examine the UCCJA. Questions of jurisdiction in Pennsylvania are controlled by Pennsylvania's version of the UCCJA, which provides, in relevant part, that a court in this Commonwealth has jurisdiction over matters as follows:

Pa.C.S. § 5343. Here the order clearly provides explicit as well as implicit instructions about the custody of the three Kreibel children. Mother is given the specific right to relocate custody of the children and by implication is allowed to exercise her primary physical custody in the new jurisdiction. Procedurally, the order was properly entered in the Clarion County court because divorce and custody matters were pending there under Mother's complaint of May 12, 1994.

(a) **General rule.**—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child. . . .

23 Pa.C.S. § 5344(a)(1)(2). "Home state" is defined under the UCCJA as "[t]he state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent . . . for at least six consecutive months, . . . ." 23 Pa.C.S. § 5343.

¶ 14 Under the UCCJA, Pennsylvania would have continuing jurisdiction to modify a child custody order only if the juris-dictional prerequisites of the UCCJA continue to be met. The first inquiry is whether Pennsylvania is now the home state. Judge Greiner concedes in his opinion that North Carolina is the home state. However, based on significant connections he finds Pennsylvania has continuing jurisdiction. Specifically, he wrote:

> although we find North Carolina to be the home state, it is in the best interest of the children that the Commonwealth of Pennsylvania retain continuing jurisdiction in this custody action because father and the children have significant contacts with Pennsylvania, and more significantly, Clarion County provides the optimum access to the relevant evidence concerning the issue at [sic] father's partial custody.

Trial Court Opinion, 6/12/98 at 2.[3]

¶ 15 Mother, however, argues forcefully on appeal, that since 1994 all the children's "significant contacts have been in North Carolina." She points specifically to the fact that the children's school and social life, medical and psychological care, and their relationships with friends as well as Mother's family are all based in North Carolina.[4] Moreover, their contact with Pennsylvania has been minimal, limited to infrequent trips to visit Father and his family because Father usually exercises his custody by visiting the children in North Carolina. Father simply asserts that the trial court correctly found sufficient contacts to allow Pennsylvania to retain jurisdiction.

¶ 16 Pennsylvania courts applying a significant connections analysis under the UCCJA have consistently construed the standard as a maximum significant connec-

---

3. The trial court's opinion provided no additional factual or legal rationale for his jurisdictional holding. In a supplemental opinion, however, the court stated "what 'significant contacts' the children had in Pennsylvania is contained in Defendant's brief reciting the numerous family members with whom the children had contact in the Clarion County, Pennsylvania area, as well as appropriate health services and Clarion County Children and Youth Services available for monitoring the welfare of the children while father exercises his visitation/partial custody privileges." Memorandum Opinion, July 29, 1998 at 1.

4. The maternal grandparents live in South Carolina.

tions test. *Dincer v. Dincer*, 549 Pa. 309, 701 A.2d 210 (1997); *Barndt v. Barndt*, 397 Pa.Super. 321, 580 A.2d 320 (1990). The rationale for this interpretation is found in the Commissioners' notes in Section 2 of the UCCJA:

> ... [the section's] purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.

*Id.* at 323 (quoting Uniform Child Custody Jurisdiction Act § 3). Thus, our courts have declined to exercise jurisdiction under Section 2 in cases of initial jurisdiction where significant connections are insufficient. *Dincer, supra.* Courts have relinquished jurisdiction to modify their own orders, in cases where factual changes such as the relocation of children to another state, have significantly attenuated relevant contacts with Pennsylvania. *See Blinkoff v. Blinkoff,* 335 Pa.Super. 10, 483 A.2d 929 (1984).

¶ 17 On this record, the facts simply do not support the exercise of continuing jurisdiction in Pennsylvania. Although Father resides in Pennsylvania, the children no longer have enough significant connections in this state. The focus of their lives is, and has been, in North Carolina where they have lived and gone to school for the past six years.[5] As an obvious corollary, evidence as to their care, education and relationships is overwhelmingly in North Carolina. Contrary to Father's argument, testimony about the children's lives, not about the way he would exercise his partial custody, is the relevant testimony under the UCCJA. Moreover, under the consent order of November 1994, Father agreed that he would not require the children to testify in a Pennsylvania proceeding. It goes without saying that in determining their best interests, the children's testimony must be carefully considered. *Swope v. Swope,* 455 Pa.Super. 587, 689 A.2d 264 (1997).

¶ 18 For all these reasons, we find that there are insufficient connections in Pennsylvania for this state to assert continuing jurisdiction. The record does not support the trial court's finding to the contrary. The best interests of the Kreibel children are clearly served if Pennsylvania relinquishes jurisdiction.

¶ 19 We find that Pennsylvania did not have jurisdiction to issue its order of June 29, 1999. Nonetheless, we hold that the order as it relates to Father's partial custody shall remain in effect until such time as the North Carolina court issues an order relating to custody and partial custody of the three children. At that time the June 29, 1999 order shall be vacated. The Superior Court relinquishes its jurisdiction.

---

5. Details of the 1998 and 1999 partial custody orders entered by Judge Greiner attest to the many extracurricular activities of the children in North Carolina including summer camps, school sports and the North Carolina Boys Choir.