Susan K. ANDERSON, Plaintiff
and Appellant,

v.

Roosevelt ANDERSON, Defendant
and Appellee.

Civ. No. 890060.

Supreme Court of North Dakota.

Dec. 20, 1989.

Eugene F. Buresh of Freed, Dynes, Reichert & Buresh, Dickinson, for plaintiff and appellant.

Dann Greenwood of Greenwood, Greenwood & Greenwood, Dickinson, for defendant and appellee.

VANDE WALLE, Justice.

Susan Anderson appealed from an order of the district court denying jurisdiction in a child-custody dispute with Roosevelt Anderson, her former husband. Susan claimed that the district court erred in determining that North Dakota was not the proper situs for jurisdiction in the custody dispute involving Aaron, a minor child. We affirm.

Susan Anderson and Roosevelt Anderson were married on September 30, 1978, in Fort Bragg, North Carolina. At the time, both parties were enlisted in the United States Army. Prior to the marriage, Susan was a resident of Dickinson, North Dakota, and Roosevelt was a resident of the State of New York. During their marriage, Susan and Roosevelt resided in North Carolina and South Carolina. One child, Aaron Anderson, was born to the parties in December of 1981. On December 17, 1981, shortly after the birth of Aaron, Susan terminated her military service. Marital problems subsequently developed, and in 1983 Susan filed an action for separation in South Carolina. The action resulted in a final decree of separate maintenance which granted Roosevelt custody over Aaron. There is no evidence to indicate that the decree was ever set aside.

Roosevelt retired from active military service in January of 1987. By this time, Susan and Roosevelt had resumed their marital relationship. During the period from January of 1987 through February of 1988, the couple and their child maintained

a residence in Fayetteville, North Carolina. Roosevelt had purchased and was operating an automobile repair business in Fayetteville. In February of 1988, Susan and Roosevelt began to experience more marital problems. These problems eventually led to another separation. Susan moved back to Dickinson, North Dakota, while Roosevelt relocated to the State of New York with Aaron. Upon his arrival in New York on February 7, 1988, Roosevelt immediately enrolled Aaron in school. Aaron attended the school for the remainder of the school year. During the following 1988–89 school year, Roosevelt enrolled Aaron as a first-grader in a New York elementary school. Aaron was attending this elementary school at all times pertinent to the instant action. From the time of his birth, Aaron has primarily resided in North Carolina and New York. Except for a brief period of visitation with Susan from the end of June until the end of July in 1988, Aaron has not resided in North Dakota.

On July 20, 1988, Susan filed a complaint in the district court for Stark County seeking an absolute decree of divorce from Roosevelt. Susan sought custody and control over Aaron in her complaint. While the complaint was filed in the district court on July 20, 1988, Susan actually served Roosevelt with the summons and complaint on August 22, 1988. Eventually, Roosevelt made a special appearance in the district court for Stark County seeking, among other things, an order dismissing the portion of the complaint regarding the custody of Aaron on the grounds that the district court lacked jurisdiction to decide the child-custody matter. Following an evidentiary hearing, the district court issued an order on February 7, 1989, declining jurisdiction over the child-custody determination of Aaron. In its order, the district court entered a number of findings, including that from the date of his birth until February of 1988 Aaron primarily resided in North Carolina. It further found that after February of 1988, Aaron resided in New York and had at all times remained in the care, custody and control of Roosevelt. The district court concluded it was "without jurisdiction over the minor child Aaron Anderson and that the appropriate jurisdiction for the decision of all child custody matters is the State of New York wherein the minor child resides with his father."

The sole issue raised on appeal is whether the district court erred in determining that North Dakota was not the proper jurisdiction for deciding child custody matters regarding Aaron.[1]

Resolution of this issue requires an analysis of the provisions of chapter 14–14, NDCC, which is our State's adoption of the Uniform Child Custody Jurisdiction Act [UCCJA]. The provision of the UCCJA concerning a court's jurisdiction to render child custody determinations is found in

1. It is apparent from the record in this case that the New York court will not accept jurisdiction while an action for custody is pending in this State. After the trial court's preliminary order granting temporary custody to Susan was entered, the Family Court of the State of New York dismissed without prejudice an action for custody of Aaron initiated by Roosevelt in that state, "[b]ased on decision of the Southwest Judicial District Court, Stark County, North Dakota which grants custody to the Respondent, Susan Anderson." The courts of this state have refused jurisdiction when an order for custody is on appeal in another jurisdiction. *Bergstrom v. Bergstrom,* 271 N.W.2d 546 (N.D.1978). NDCC § 14–14–06.

A number of courts have held that an interlocutory review of an order pertaining to the dismissal of child custody proceedings for lack of jurisdiction is appropriate, because the postponement of appellate consideration of the mer-

its of the jurisdictional dispute would cause unnecessary hardship both to the parties involved in the custody dispute and, particularly, to the minor children. *See, e.g., Morgan v. Morgan,* 666 P.2d 1026 (Alaska 1983).

In the case on appeal, we view the trial court's order as severing the issue of jurisdiction in the custody action "IT IS THEREFORE THE ORDER of the Court that the above entitled domestic relations litigation shall address all matters essential to the termination of the marriage contract between the Plaintiff and the Defendant, excepting therefrom the matter of child custody, child support and visitation of the minor child by the non-custodial parent." Under Rule 21, NDRCivP, any claim against a party may be severed and proceeded with separately, and the trial court is not required to make a Rule 54(b) determination to make the judgment or order appealable. *Federal Land Bank v. Wallace,* 366 N.W.2d 444 (N.D.1985).

NDCC § 14–14–03.[2] Section 14–14–03 provides, in portions relevant to this appeal:

"*Jursidiction.*

"1. A court of this state which is competent to decide child custody matters has jurisdiction to make child custody determination by initial decree or modification decree if:

"a. This state (1) is the home state of the child at the time of the commencement of the proceeding, or (2) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; [or]

"b. It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

The term "home state," as employed in § 14–14–03(1)(a), is defined to mean:

"[T]he state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." *See* NDCC § 14–14–02(5).

In applying the jurisdictional provisions of § 14–14–03(1), it has been noted that subsection (b) is more appropriately applied only after it is first determined that no other state could have exercised jurisdiction as a home state under subsection (a).[3] *See Blinkoff v. Blinkoff*, 335 Pa.Super. 10, 483 A.2d 929 (1984); *Tettis v. Boyum*, 317 Pa.Super. 8, 463 A.2d 1056 (1983). Furthermore, if a decision regarding whether or not to decline jurisdiction in a child-custody matter involves the use of discretion by the trial court, that decision will be reversed on appeal only when the court abused its discretion. *See Dennis v. Dennis*, 387 N.W.2d 234 (N.D.1986); *Farrell v. Farrell*, 133 Mich.App. 502, 351 N.W.2d 219 (1984).

Susan contends that under § 14–14–03(1)(a), neither the state of North Dakota nor the state of New York could properly claim home-state jurisdiction to make a child-custody determination because Aaron had not lived with a parent in either state for the requisite six consecutive months. Therefore, relying on the provisions of § 14–14–03(1)(b), Susan claims that North Dakota could have properly assumed jurisdiction on the basis that there were a number of significant connections with the State. Susan argues the existence of significant connections from the fact that she and Roosevelt had used North Dakota for vehicle registration and income tax purposes while in the military in North Carolina, and from the fact of Aaron's visitation for nearly a month in the summer of 1988.

We do not believe that the trial court abused its discretion when it declined jurisdiction and found that New York was the proper jurisdiction for child custody matters. Roosevelt and Aaron moved to

---

2. We have also considered the provisions of the Parental Kidnapping Prevention Act, 28 U.S.C. 1738A (PKPA). Because the trial court refused jurisdiction it did not make a child-custody determination within the meaning of that term as defined by the Act. The Act, therefore, does not apply. *Compare, Dahlen v. Dahlen*, 393 N.W.2d 765 (N.D.1986) [district court was without continuing jurisdiction under PKPA to modify custody decree, despite retained jurisdiction provisions of Uniform Child Custody Jurisdiction Act where no participants to custody dispute continued to reside in state].

3. Even when a court determines that it has jurisdiction under the provisions of NDCC § 14–14–03, the court may still decline to exercise its jurisdiction on the basis that another state is a more convenient forum. *See* NDCC § 14–14–07. *See also Dennis v. Dennis*, 387 N.W.2d 234 (N.D.1986).

New York on February 7, 1988. While Susan filed her complaint in the district court for Stark County on July 20, 1988, the case did not actually commence until August 22, 1988, when Roosevelt was served with a summons and a copy of Susan's complaint. *See* Rule 3, NDRCivP [civil action is commenced by service of a summons]. Furthermore, the district court specifically entered findings that Aaron had resided in New York since February of 1988, and had at all times remained in the custody and control of Roosevelt. Thus, because Aaron lived with Roosevelt for at least six consecutive months in New York before the commencement of Susan's proceeding, the district court properly determined that New York, and not North Dakota, was the home state of Aaron under the provisions of the UCCJA. Moreover, the district court could have properly found New York to be Aaron's home state, despite the fact that Aaron actually spent a portion of the six-month period visiting Susan in North Dakota. Under § 14–14–02(5), the definition of a home state specifically allows periods of temporary absence to count as part of the six-month period. In view of these circumstances, it was appropriate for the district court to decline jurisdiction, for New York can be considered Aaron's home state under the UCCJA.

Finally, even if we were to assume that neither North Dakota nor New York could claim home-state jurisdiction, we believe that Susan would still fail in her argument regarding § 14–14–03(1)(b). Under subsection (b), the child and his or her parents, or the child and at least one parent, must have a significant connection with North Dakota. Subsection (b) further requires that North Dakota have substantial evidence regarding the child's care, protection, training, and personal relationships. In this case, Susan's only connection of Aaron to North Dakota is the fact that he spent some time during the summer of 1988 visiting in Dickinson. However, courts have held that where the only connection a child had with a state were from occasional visitations, those occasional visits were insufficient to provide the

significant connection required under subsection (b). *See Schoeberlein v. Rohlfing*, 383 N.W.2d 386 (Minn.1986) [Minnesota did not have jurisdiction under subsection (b) where the only connection the child had was a summer visitation]; *Hernandez v. Collura*, 113 A.D.2d 750, 493 N.Y.S.2d 343 (1985) [occasional visits to the state was insufficient to provide the "significant connection" required by subsection (b)]. As Susan has shown no other connection of Aaron to North Dakota, it was appropriate for the district court to decline jurisdiction under subsection (b). It appears from the record that the evidence pertaining to Aaron's care, school, friends, and training exists in New York, and not in North Dakota.

We have found that it was proper for the district court to decline jurisdiction over custody matters pertaining to Aaron, and accordingly we affirm the order of the district court.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ.