2017 ND 106

STATE of North Dakota, County of Cass, ex rel. Jessica Lynn Klein, Plaintiff

and

Jessica Lynn Klein, Plaintiff and Appellant

v.

Micah Lehi WINEGAR, Defendant and Appellee

No. 20160281

Supreme Court of North Dakota.

Filed 4/25/2017

Earl B. Kavanaugh (argued), 423 C. Court Ave., Ste. 200, Des Moines, IA 50309, and Greg W. Liebl (appeared), 4627 44th Ave. S., Ste. 108, Fargo, ND 58104, for plaintiff and appellant.

Lilie A. Schoenack (argued), 230 Fourth St. N.W., Rm. 301, Valley City, ND 58072, and Alisha L. Ankers (appeared), 1712 Main Ave., Ste. 202, Fargo, ND 58103, for defendant and appellee.

VandeWalle, Chief Justice.

[¶ 1] Jessica Klein appealed the district court's temporary order for custody after it denied her motion to transfer jurisdiction to Iowa. Klein argues the district court lacked subject matter jurisdiction and North Dakota was an inconvenient forum to hear the case. We affirm, concluding North Dakota properly retained exclusive, continuing jurisdiction over the matter and did not abuse its discretion in finding North Dakota to be a convenient forum.

## I.

[¶ 2] Jessica Klein and Micah Winegar have one child, Z.J.W., born in 2003. North Dakota determined paternity and, under a stipulation, awarded primary residential responsibility to Klein. For approximately the first ten years of his life, Z.J.W. lived with Klein in North Dakota. In 2013, the district court transferred primary residential responsibility of Z.J.W. to Winegar, who lived in Iowa. Z.J.W. has been living with Winegar in Iowa since the transfer of primary residential responsibility.

[¶ 3] In November 2015, Winegar filed a motion to modify the amended judgment. Klein answered by arguing North Dakota no longer has exclusive, continuous jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"). A judicial referee held a hearing on the matter and concluded that North Dakota retained exclusive, continuous jurisdiction under N.D.C.C. § 14–14.1–13 and was not an inconvenient forum under N.D.C.C. § 14–14.1–18. Klein requested the district court review the referee's findings. Upon a de novo review, the district court agreed with the referee and found North Dakota continued to have subject matter jurisdiction and was not an inconvenient forum. Following the district court's order, the parties entered into a stipulated temporary order which addressed residential responsibility.

[¶ 4] On appeal, Klein argues the district court lacked subject matter jurisdiction under the UCCJEA and the district court abused its discretion for not finding North Dakota is an inconvenient forum to hear the matter. Winegar argues Klein: (1) waived her right to appeal the issue of subject matter jurisdiction because she stipulated to North Dakota's jurisdiction, (2) appealed an interlocutory order, or conversely, (3) the district court's order finding North Dakota had jurisdiction was a final, appealable order from which Klein did not timely appeal.

## II.

[¶ 5] In Schirado v. Foote, we have laid out the standard for review of challenges to subject matter jurisdiction under the UCCJEA:

It is well settled under North Dakota law that challenges to a district court's subject matter jurisdiction are reviewed de novo when the jurisdictional facts are not in dispute. Harshberger v. Harshberger, 2006 ND 245, ¶ 16, 724 N.W.2d 148. When jurisdictional facts are disputed, the district court's decision on subject matter jurisdiction necessarily involves findings of fact and conclusions of law. Therefore, when disputed facts surround a challenge to the district court's subject matter jurisdiction, we are presented with a mixed question of law and fact. See Escobar v. Reisinger, 133 N.M. 487, 64 P.3d 514, 516 (Ct. App. 2003) (holding jurisdictional challenges under the Uniform Child Custody Jurisdictional Act ("UCCJA") is mixed question of law and fact). Under this standard, we review the "questions of law subject to the de novo standard of review and the findings of fact subject to the clearly erroneous standard of re-

view." <u>Wigginton v. Wigginton</u>, 2005 ND 31, ¶ 13, 692 N.W.2d 108.

2010 ND 136, ¶ 7, 785 N.W.2d 235.

### A.

▮ [¶ 6] We first address Winegar's challenges to Klein properly appealing her issues. For a court's order or judgment to be valid, it must have both subject matter and personal jurisdiction. <u>Albrecht v. Metro Area Ambulance</u>, 1998 ND 132, ¶ 10, 580 N.W.2d 583. The question of subject matter jurisdiction can be raised at any time during the proceeding. N.D.R.Civ.P. 12(h)(3). Additionally, subject matter jurisdiction cannot be conferred by agreement, consent, or waiver. <u>Trottier v. Bird</u>, 2001 ND 177, ¶ 5, 635 N.W.2d 157; UCCJEA § 201, cmt., 9 U.L.A. 673 ("since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective."). Because subject matter jurisdiction cannot be conferred by agreement, consent, or waiver, Winegar's argument that Klein waived the issue by agreeing to the district court's jurisdiction is without merit.

▮ [¶ 7] Next, Winegar argues Klein should have appealed the district court's order finding North Dakota retained exclusive, continuing jurisdiction under N.D.C.C. § 14–14.1–13. We disagree. The district court's order was interlocutory. The order was not a final judgment, nor did it affect a substantial right of either of the parties; it merely allowed the litigation to continue. Therefore, it was proper for Klein to not seek an appeal from the district court's order on January 7, 2016.

▮ [¶ 8] Alternatively, Winegar argues Klein's appeal is improper because she appealed from a "Stipulated Temporary Order," which is interlocutory and not a final judgment. However, the stipulated temporary order controlled the parties' parenting time and rights for two years. We conclude the order is an appealable order under N.D.C.C. § 28–27–02(1).

### B.

▮ [¶ 9] We analyze cases involving interstate custody disputes under the UCCJEA, which North Dakota adopted in 1999. <u>See</u> N.D.C.C. §§ 14–14.1–01 to –37. The first step involving interstate custody disputes is to determine which state has jurisdiction for an initial child custody determination. N.D.C.C. § 14–14.1–12. Once a court makes an initial custody determination, that state retains exclusive, continuing jurisdiction until one of the provisions in N.D.C.C. § 14–14.1–13 is triggered. Section 14–14.1–13 states:

Except as otherwise provided in section 14–14.1–15 [temporary emergency jurisdiction], a court of this state which has made a child custody determination consistent with section 14–14.1–12 or 14–14.1–14 has exclusive, continuing jurisdiction over the determination until:

a. A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

b. A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Additionally, "exclusive jurisdiction will no longer exist if the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that a court could no

longer find significant connections and substantial evidence." Benson v. Benson, 2003 ND 131, ¶ 11, 667 N.W.2d 582 (citing UCCJEA § 202, cmt., 9 U.L.A. [674]).

[¶ 10] Neither party disputes the validity of the original custody determination made in 2004. Therefore, we must determine if one of the provisions in N.D.C.C. § 14–14.1–13 has been triggered. Because Klein still resides in the state, North Dakota retains exclusive, continuing jurisdiction until a court of this state determines: (1) Z.J.W. no longer has a significant connection with the state and (2) the state no longer has substantial evidence concerning Z.J.W.'s care, protection, training, and personal relationships.

[¶ 11] We have yet to define what facts support the finding that North Dakota has a "significant connection" and thus, retains exclusive, continuing jurisdiction under § 14–14.1–13. Although this Court has yet to define "significant connection," numerous other states have set up some sort of framework to aid in their determination. Some states retain exclusive, continuing jurisdiction on the sole fact that the resident parent exercises his or her parenting time within the state. White v. Harrison–White, 280 Mich.App. 383, 760 N.W.2d 691 (2008); Uttley v. Bobo, 97 Ark. App. 15, 242 S.W.3d 638 (2006); Fish v. Fish, 266 Ga.App. 224, 596 S.E.2d 654 (2004); Olson v. Olson, 2002 WL 31056935 (Minn. Ct. App. 2002) (unreported opinion); EB v. EFB, 7 Misc.3d 423, 793 N.Y.S.2d 863 (N.Y. Sup. Ct. 2005); Ruth v. Ruth, 32 Kan.App.2d 416, 83 P.3d 1248 (2004). Other states find a significant connection with the state when the resident parent spent time with the child plus the child had: contact with other relatives, West v. West, 364 Ark. 73, 216 S.W.3d 557 (2005); In re Forlenza, 140 S.W.3d 373 (Tex. 2004); Biggs v. Biggs, 301 S.W.3d 32 (Ky. Ct. App. 2009); health care within the state, Griffith v. Tressel, 394 N.J.Super. 128, 925 A.2d 702 (2007); Shields v. Kimble, 2010 Ark. App. 479, 375 S.W.3d 738 (2010); or spent a considerable amount of time residing in the state prior to moving, Rennie v. Rosenthol, 2010 PA Super 88, 995 A.2d 1217 (2010).

[¶ 12] Additionally, the language of the UCCJEA indicates that mere visitation of the child in the state is sufficient to retain exclusive, continuing jurisdiction. The UCCJEA uses the phrase "significant connection" twice. In § 14–14.1–12, "significant connection" is used to determine initial custody jurisdiction when a child has no "home state." Section 14–14.1–12(1)(b)(1) states: "The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence." (Emphasis added). The phrase "significant connection" is also contained in § 14–14.1–13; however, § 14–14.1–13 does not include the limiting phrase "other than mere physical presence" contained in § 14–14.1–12. The absence of this phrase indicates that mere physical presence of the child within the state is sufficient for the state to find a significant connection and retain exclusive, continuing jurisdiction.

[¶ 13] In its analysis, the district court found Z.J.W.: (1) spends a great deal of time in North Dakota, including two months in the summer; (2) has spent the majority of his life in North Dakota before moving to Iowa in 2013; and (3) has received and continues to receive medical treatment in North Dakota. The record also includes evidence Z.J.W. has extended family in North Dakota, including his paternal grandparents, a paternal aunt, and a paternal uncle. We conclude these facts are sufficient to find Z.J.W. has a significant connection to North Dakota.

[¶ 14] Klein points to <u>Anderson v. Anderson</u>, 449 N.W.2d 799 (N.D. 1989) to support her argument that visitation alone is insufficient for a child to form a significant connection with the state. However, Klein's reliance on <u>Anderson</u> is misplaced. <u>Anderson</u> concerns an initial custody determination under the UCCJA, the UCCJEA's predecessor. <u>Id.</u> at 800. In <u>Anderson</u>, we found the district court properly determined that New York was the child's "home state" under the UCCJA because the child had lived in New York for six consecutive months prior to the filing for custody. <u>Id.</u> at 802. We further stated that even if we assumed the child did not have a "home state," a one month visit to North Dakota was insufficient for the child to form a significant connection to the state. <u>Id.</u>

[¶ 15] <u>Anderson</u> involved the initial custody of a child, while in this case, there already is a valid custody determination. This distinction may have been minor under the UCCJA, but the UCCJEA provides greater power and control to a state in retaining its jurisdiction once it makes an initial custody determination. Additionally, in <u>Anderson</u> the question was which state, North Dakota or New York, was in a better position to determine the custody of the child. <u>Id.</u> However, in our determination of whether North Dakota retains exclusive, continuing jurisdiction, we do not compare and contrast the relationship and evidence the two states have with the child; rather our focus is on the child and the state of North Dakota.

[¶ 16] Because we conclude North Dakota still has a significant connection with Z.J.W., it is not necessary to determine whether North Dakota possesses substantial evidence concerning Z.J.W.'s care, protection, training, and personal relationships. <u>E.g.</u>, <u>White v. Harrison–White</u>, 760 N.W.2d at 695–96. We conclude the district court properly determined North Dakota retains exclusive, continuing jurisdiction over the matter.

## C.

[¶ 17] Alternatively, Klein argues the district court abused its discretion in ruling North Dakota was a convenient forum for the case. Once a court determines that it has subject matter jurisdiction over the case, it may still decline to exercise its jurisdiction "if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." N.D.C.C. § 14–14.1–18. Section 14–14.1–18(b) states:

Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

a. Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

b. The length of time the child has resided outside this state;

c. The distance between the court in this state and the court in the state that would assume jurisdiction;

d. The relative financial circumstances of the parties;

e. Any agreement of the parties as to which state should assume jurisdiction;

f. The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

g. The ability of the court of each state to decide the issue expeditiously

and the procedures necessary to present the evidence; and

h. The familiarity of the court of each state with the facts and issues in the pending litigation.

[¶ 18] A district court's decision whether to decline to exercise jurisdiction on inconvenient forum grounds is entirely discretionary and will not be overturned unless the district court abused its discretion. Dennis v. Dennis, 387 N.W.2d 234, 235 (N.D. 1986). A district court abuses its discretion if it acts arbitrarily, unreasonably, or capriciously, or misinterprets or misapplies the law. State v. Feist, 2006 ND 21, ¶ 22, 708 N.W.2d 870. Although the district court did not expressly state its reasoning for each factor in its order, it adopted the referee's findings and reasoning contained in the referee's thorough analysis of the factors in its "Findings of Fact and Order Denying Motion to Transfer Jurisdiction."

### 1. Domestic Violence

[¶ 19] Klein argues the district court erred in finding Factor A favored neither party because a psychologist, Dr. Cavett, believed Z.J.W. was being mistreated in Winegar's home. For this factor, the district court stated: "This Court has made domestic violence findings. The Court does find it is unlikely that domestic violence would continue to occur into the future." The district court then concluded that the factor favors neither party.

[¶ 20] The record is full of conflicting evidence pertaining to Z.J.W.'s care. There allegedly have been numerous complaints to Iowa's Social Services pertaining to concerns about Z.J.W.'s care, with Social Services taking no action. There is also conflicting opinions between Z.J.W.'s psychologists on whether there is abuse in Iowa. Dr. Cavett performed an assessment of Z.J.W. in North Dakota and concluded there was a strong possibility of abuse. However, Z.J.W.'s full-time psychologist in Iowa, Dr. Aupperle, does not believe there is any abuse in Z.J.W.'s home. Because of the multitude of conflicting information, we cannot say the district court abused its discretion in holding that Factor A favored neither party.

### 2. Length of Time the Child Has Resided Out of North Dakota

[¶ 21] Klein argues Factor B should weigh in her favor because the most current information about Z.J.W.'s health and well-being is located exclusively in Iowa. The district court found Factor B favored neither party because the litigation began in North Dakota in 2004, it had years of experience in the matter, and the most current information about Z.J.W. was likely in both states. After moving to Iowa in 2013, Z.J.W. spends his summers and alternating holidays in North Dakota, which amounts to approximately 20% of the year. When the length of time Z.J.W. has resided in Iowa is compared to the amount of time Z.J.W. has lived and visited in North Dakota, the district court did not abuse its discretion in finding Factor B favored neither party.

### 3. Distance Between the Two Courts

[¶ 22] Factor C looks at the distance between the court in this state and the court in the state which would assume jurisdiction if the district court found North Dakota to be an inconvenient forum. The district court found the distance to be 477 miles, each party would be equally inconvenienced in either forum, and the factor favored neither party. Klein argues that because she would be the one burdened by the case moving to Iowa and she is in favor of the change in jurisdiction, this factor should favor her. There are witnesses and parties in both states; both parties are going to be inconvenienced in

some way, regardless of which state the proceedings occur. The district court's finding was not arbitrary or unreasonable.

### 4. The Nature and Location of the Evidence

[¶ 23] The district court found Factor F favored neither party because of the length of time of the litigation in North Dakota, the volume of evidence in North Dakota's record, and the pending motion included both North Dakota and Iowa evidence. Klein argues most of the witnesses live in Iowa and that only Iowa can ensure in-person witness testimony. Both states contain evidence. Z.J.W. resided in North Dakota for the first ten years of his life. The majority of the pertinent information for that time period remains in North Dakota. Conversely, for the past two years, Z.J.W. has lived, attended school, and received psychological care in Iowa. Therefore, substantial information pertaining to Z.J.W.'s current care is in Iowa. Because both Iowa and North Dakota possess substantial, relevant evidence about Z.J.W.'s care, the district court did not abuse its discretion in finding Factor F favored neither party.

### 5. The Familiarity of the Court of Each State with the Facts and Issues

[¶ 24] Factor H was the only factor the district court did not find to be neutral; it found the factor favored North Dakota because of how extensive the litigation had been in North Dakota over the past twelve years. Iowa courts have no familiarity with the facts or issues of the case. The district court did not abuse its discretion in finding this factor favored North Dakota.

[¶ 25] Lastly, Klein argues the district court utilized improper factors from the repealed UCCJA in determining whether North Dakota was an inconvenient forum.

Klein argues when the district court cited a case under the repealed UCCJA, it partook in an improper analysis by utilizing out-of-date statutes. The district court cited to Luna v. Luna, 1999 ND 79, ¶ 23, 592 N.W.2d 557, to support its statement that Z.J.W. spends a considerable amount of time in North Dakota. To explain its reasoning, the district court included the parenthetical "[t]he original divorce decree was rendered in North Dakota, the mother still lived in North Dakota, there was a substantial amount of litigation involving these two parties in North Dakota, and the daughter had spent time here. Based on these facts, the district court did not abuse its discretion in finding North Dakota a convenient forum."

[¶ 26] Under N.D.C.C. § 14–14.1–18, the district court must take into consideration "all relevant factors." As such, its analysis of inconvenient forum is not restricted to the factors contained within the statute. The district court completed the analysis required under the statute and included other "relevant factors," i.e. the amount of time the child spends in the state and the voluminous amount of litigation between the parties over the past twelve years in North Dakota. The district court's use of Luna's analysis was to supplement its analysis of § 14–14.1–18, not replace it.

[¶ 27] Because the district court did not partake in any improper analysis under the UCCJEA and its reasoning to each of the factors was not arbitrary or unreasonable, the district court did not abuse its discretion when it found North Dakota to be a convenient forum.

### D.

[¶ 28] Lastly, both parties argue they should be awarded attorney's fees. Costs and attorney's fees are permissible under Rule 38 of the Rules of Appellate

Procedure. Rule 38 states, "[i]f the court determines that an appeal is frivolous, or that any party has been dilatory in prosecuting the appeal, it may award just damages and single or double costs, including reasonable attorney's fees." "An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates bad faith in pursuing the litigation." Gray v. Berg, 2016 ND 82, ¶ 16, 878 N.W.2d 79. This Court has awarded costs and fees when a party's "arguments and unsupported assertions on appeal are 'so factually and legally devoid of merit that [the party] should have been aware of the impossibility of success on appeal.'" Nails v. US Bank (USA) N.A., 2015 ND 51, ¶ 2, 861 N.W.2d 172 (quoting Riemers v. O'Halloran, 2004 ND 79, ¶ 16, 678 N.W.2d 547).

[¶ 29] Winegar argues this Court should award him attorney's fees because Klein's appeal is completely without merit because she: (1) failed to properly appeal the issue; and (2) stipulated to the district court's subject matter jurisdiction in the temporary order. As discussed above, subject matter jurisdiction can be challenged at any time and a party cannot consent to or waive subject matter jurisdiction. Thus, Klein's appeal is not flagrantly groundless, devoid of merit, or demonstrates bad faith; Winegar's request for attorney's fees is denied.

[¶ 30] In her reply brief, Klein also requested attorney's fees. Klein argues that "[a]s a result of the erroneous rulings of [judicial referee] and the District Court, Klein was forced to both prosecute and defend motions for change in primary residential responsibility in North Dakota." Under N.D.R.App.P. 38, this Court may award reasonable attorney's fees if "any party has been dilatory in prosecuting the appeal." Klein does not argue Winegar's conduct on appeal was intended to cause delay; rather, she argues she had extra work because of the referee's and district court's conduct. Therefore, we deny Klein's request for attorney's fees.

III.

[¶ 31] We affirm the district court's order and deny the parties' requests for attorneys' fees.

[¶ 32] Gerald W. VandeWalle, C.J.

Jerod E. Tufte

Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers