23CA1848 Parental Resp Conc ML 12-19-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1848
Boulder County District Court No. 22DR30217
Honorable Bruce Langer, Judge

In re the Parental Responsibilities Concerning M.L., a Child,

and Concerning Logan Smith,

Appellee,

and

Maike Leberl,

Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Yun and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 19, 2024

Bridge to Justice, Bruce Wiener, Boulder, Colorado, for Appellee

Russel Murray III, P.C., Russel Murray III, Englewood, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this proceeding to allocate parental responsibilities between Maike Leberl (mother) and Logan Smith (father), mother appeals the denial of her motion to dismiss the case for lack of subject matter jurisdiction. We affirm and remand to the district court for a determination of father's reasonable appellate attorney fees.

## I.     Background

¶ 2     Mother is an Austrian citizen. She spends time and works in both Austria and Colorado. Father lives and works in Colorado. The parties have one child, born in Austria in May 2021.

¶ 3     In June 2022, while mother was in Colorado, father filed a petition for an allocation of parental responsibilities (APR) in the district court in Boulder. At that point, the child had traveled between Austria and Colorado several times, spending a total of about eight months in Colorado.

¶ 4     Mother moved to dismiss the petition, arguing that under the Uniform Child-custody Jurisdiction and Enforcement Act (UCCJEA), §§ 14-13-101 to -403, C.R.S. 2024, the district court did not have jurisdiction to make an initial child custody determination. According to mother, Colorado was not the child's home state, the

1

child did not have significant connections to Colorado, and, in any event, Colorado was an inconvenient forum for the APR proceeding.

¶ 5 The court held an evidentiary hearing at which two experts in Austrian law testified. Following the hearing, the district court ruled that while neither Colorado nor Austria was the child's home state,[1] the child had significant connections to Colorado, allowing the court to exercise jurisdiction over the case. The court later entered orders allocating parental responsibilities.

## II. Subject Matter Jurisdiction

¶ 6 Mother contends that the district court erred by determining that it had significant-connection jurisdiction under the UCCJEA. We disagree.

### A. Legal Principles and Standard of Review

¶ 7 In Colorado, district courts are courts of general jurisdiction. *Currier v. Sutherland*, 218 P.3d 709, 712 (Colo. 2009). Their jurisdictional powers are only limited by statute or constitutional provision. *Id.*

---

[1] For purposes of the UCCJEA, a foreign country is treated as if it were another state. *See* § 14-13-104(1), C.R.S. 2024.

¶ 8    "The UCCJEA is one such limiting statute: It 'prescribes the circumstances under which jurisdiction that otherwise is conferred by constitution or statute can be exercised in a given case.'" *People in Interest of S.A.G.*, 2021 CO 38, ¶ 23 (citation omitted).  Under the UCCJEA, a Colorado court has jurisdiction to make an initial child custody determination only under the following circumstances:

- Colorado is the child's home state (meaning the state in which the child has lived for at least 182 consecutive days immediately before the commencement of the proceeding) on the date the proceeding begins.  §§ 14-13-201(1)(a), 14-13-102(7)(a), C.R.S. 2024.

- No other state can exercise "home state" jurisdiction under a similar provision of law, and (1) the child and at least one parent have a significant connection with Colorado and (2) substantial evidence is available in Colorado concerning the child's care, protection, training, and personal relationships.  § 14-13-201(1)(b).

- All courts having jurisdiction under subsection 14-13-201(1)(a) or (b) have declined to exercise jurisdiction on the

3

ground that Colorado is a more appropriate forum. § 14-13-201(1)(c).

- No court of any other state would have jurisdiction under subsections 14-13-201(1)(a), (b), or (c). § 14-13-201(1)(d).

¶ 9    On appeal of a denial of a motion to dismiss for lack of subject matter jurisdiction, we review the court's findings for clear error and its legal conclusions de novo. *Sterling Ethanol, LLC v. Colo. Air Quality Control Comm'n*, 2017 COA 26, ¶ 7.

B.    The District Court Had Jurisdiction To Issue Orders

¶ 10    The district court first examined whether it had home state jurisdiction under the UCCJEA. Because the child had not lived in Colorado for the 182 consecutive days preceding father's filing of the petition, the court concluded that Colorado was not the child's home state.

¶ 11    But it also concluded that Austria was not the child's home state. The comparable Austrian jurisdictional standard — "habitual residence" — was not satisfied because the child had not lived in Austria for six consecutive months. *See* § 14-13-201(1)(b); *S.A.G.*, ¶ 26.

¶ 12    Next, the district court examined whether it had significant-connection jurisdiction.  To do so, the court looked at mother's and the child's ties to Colorado.  Mother appears to argue that the court erred by considering irrelevant facts in concluding that it had jurisdiction.[2]  We are not persuaded.

¶ 13    The UCCJEA does not define the term "significant connection" or provide specific factors for courts to consider in making the significant connection determination.  Under our case law, however, courts may consider factors including the parent's and child's length of residence in the state, the parent's and child's connections to family and friends, and the parent's employment in the state.  *See In re Parental Responsibilities Concerning B.C.B.*, 2015 COA 42, ¶¶ 18, 21.  Other jurisdictions have likewise held that courts should consider a "wide variety of ties" in determining whether a child has

---

[2] To the extent mother argues that substantial evidence of the child's care, protection, and relationships is not available in Colorado or that Colorado is an inconvenient forum, *see* § 14-13-207(1), C.R.S. 2024 (a district court may decline to exercise its jurisdiction if "it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum"), the arguments are too undeveloped for us to review.  *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, *aff'd*, 2021 CO 56.

a significant connection to a particular state. *See, e.g., DeLima v. Tsevi*, 921 N.W.2d 89, 96-97 (Neb. 2018) (courts should consider factors including the child's relationship with extended or blended family members, enrollment in school or daycare, participation in social activities, access to medical care, and the parent's employment or family ties).

¶ 14     Here, the district court properly considered various factors in making its factual findings.

- The child had resided in Colorado for "60% of her life." *See B.C.B.,* ¶ 17 (considering the length of time the child spent in Colorado prior to the commencement of the APR action); *State v. Winegar*, 2017 ND 106, ¶ 13 (concluding that significant-connection jurisdiction existed where, among other factors, the child had spent the "majority of his life" in the state).

- Mother owns a rental property in Boulder. *See In re Ari S.*, 285 Cal. Rptr. 3d 119, 124 (Ct. App. 2021) (mother's land ownership in the state showed a significant connection).

- Mother had "been working [in Boulder] while on parental leave in Austria" and had registered a limited liability company in

6

the state. *See B.C.B.*, ¶ 18 (considering parent's employment history); *In re Marriage of Diaz*, 845 N.E.2d 935, 943 (Ill. App. Ct. 2006) (considering fact that mother intended to find employment in the state); *cf. Brandt v. Brandt*, 2012 CO 3, ¶ 3 (in determining whether a parent "presently reside[s]" in a state for purposes of the UCCJEA, the court should consider where a parent maintains her professional licensure).

- Mother had collected unemployment benefits in Colorado. *See H.T. v. Cleburne Cnty. Dep't of Hum. Res.*, 163 So. 3d 1054, 1067 (Ala. Civ. App. 2014) (relying on mother's frequent moves between two states and her receipt of social services); *DeLima*, 921 N.W.2d at 96 (listing "the availability of government assistance" as a factor).

- Mother paid taxes in Colorado. *Cf. Brandt*, ¶ 3.

- Mother has a Colorado driver's license. *See Wagner v. Wagner*, 2005 PA Super 377, ¶ 26 (considering as one factor showing a significant connection that parent had a driver's license from the state).

- Maternal grandparents who share caretaking responsibilities have a permanent residence in Boulder. *See B.C.B.*, ¶ 18; *Ariz. Dep't of Econ. Sec. v. Grant ex rel. Cnty. of Maricopa*, 307 P.3d 1003, 1007 (Ariz. Ct. App. 2013) (considering where grandparents live if they contribute to the care of the child); *In re T.B.*, 497 S.W.3d 640, 647 (Tex. App. 2016) (considering grandparent residence when children lived with grandparent for period of time).

- Mother has a boyfriend, described as the child's "factual father," who lives and works in Colorado. *See B.C.B.*, ¶¶ 18, 21 (considering family ties and caretaking responsibilities); *In re S.J.A.*, 272 S.W.3d 678, 685 (Tex. App. 2008) (considering fact that mother's fiancé lived in the state).

¶ 15    And, contrary to mother's assertion, the court also considered evidence of mother's connection to Austria. The court noted that mother and the child "have Austrian citizenship[,] have access to Austria's generous social benefits . . . [and mother] has a job awaiting her [in Austria]." However, the court did not find credible

mother's testimony that she planned to settle permanently in Austria.

¶ 16    Because mother failed to include a transcript of the jurisdiction hearing in the record on appeal, we must presume that all of the court's findings are supported by record evidence. *See In re Marriage of Dean*, 2017 COA 51, ¶ 13.

¶ 17    The court appropriately weighed the evidence adduced at the hearing and concluded that the child had a more significant connection to Colorado than to Austria. Mother essentially asks us to reweigh the evidence and make alternative credibility findings to reach a contrary conclusion. But we may not reweigh evidence or substitute our judgment for that of the district court. *See In re Estate of Owens*, 2017 COA 53, ¶ 22. Accordingly, we discern no error in the court's determination that it had significant-connection jurisdiction.

¶ 18    Mother's conclusory reference to the "Hague Convention" does not convince us otherwise. Mother did not raise the Hague Convention in the district court (except to argue that it did *not* apply to this case), she does not explain which provision of the

Hague Convention applies, and she does not cite any authority relevant to the issues in this case.[3]

## C. Attorney Fees

¶ 19 Father requests an award of reasonable appellate attorney fees on the ground that mother's appeal is frivolous. *See* C.A.R. 39.1; § 13-17-102(4), C.R.S. 2024.

¶ 20 An appeal may be frivolous as filed or as argued. *Calvert v. Mayberry*, 2019 CO 23, ¶ 45. An appeal is frivolous as filed when there is "no legitimately appealable issue[ ]." *Id.* It is frivolous as argued when the appellant "fail[s] to set forth . . . a coherent assertion of error, supported by legal authority" in a manner consistent with C.A.R. 28. *Id.* (quoting *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006)).

¶ 21 We conclude that mother's appeal is frivolous as argued. Although we have done our best to discern mother's argument on

---

[3] The two cases on which mother relies, *Monasky v. Taglieri*, 589 U.S. 68 (2020), and *In re S.L.*, 503 P.3d 244 (Kan. Ct. App. 2021), involve child abductions. As the Kansas court explained, the Hague Convention applies when a child who was habitually residing in one signatory state is wrongfully removed to, or retained in, another state, and it requires the latter state to order the return of the child. 503 P.3d at 258. This case does not involve a child abduction.

appeal, her briefing did not assist us much in that endeavor. The briefing neither "coherently explain[s] why the district court erred" nor includes any citations to relevant authority that show an error occurred. *Martin v. Essrig*, 277 P.3d 857, 860 (Colo. App. 2011); *Castillo*, 148 P.3d at 292 (appeal was frivolous as argued where opening brief failed to set forth identifiable assertions of error with citations to authorities).

¶ 22    Furthermore, in violation of this court's appellate rules, *see* C.A.R. 28(a)(5), mother's briefing does not contain citations to the record. The appellate rules are not mere technicalities but are designed to facilitate appellate review. *Cikraji v. Snowberger*, 2015 COA 66, ¶ 10. When a party fails to direct us to relevant portions of the record, "appellants place the burden of searching records on us" and on the opposing party. *O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo. App. 2010). Mother also failed to provide a transcript of the jurisdiction hearing, which likewise hindered our ability to conduct a thorough review.

¶ 23    Based on these deficiencies in mother's briefing, we exercise our discretion under C.A.R. 39.1 to remand the case to the district

11

court to determine reasonable appellate attorney fees. However, father is entitled only to fees incurred in preparing and filing the answer brief and not to fees expended in filing motions, which, in our view, unnecessarily expanded the appellate litigation.

## III. Disposition

¶ 24 The judgment is affirmed, and the case is remanded with instructions for the trial court to award father his reasonable appellate attorney fees.

JUDGE YUN and JUSTICE MARTINEZ concur.