**In the Interest of S.J.A., C.J.A., and N.J.A., Minor Children.**

No. 05–08–00183–CV.

Court of Appeals of Texas, Dallas.

Nov. 20, 2008.

Teresa Clark Evans, McClure Duffee & Eitzen LLP, Georganna L. Simpson, Law Offices of Georganna L. Simpson, Dallas, Vickie J. Annett Ardoin, Garland, for Appellants.

Angel Berbarie, Holmes, Diggs, Eames & Puhl, Dallas, for Appellee.

Before Chief Justice THOMAS and Justices WRIGHT and MAZZANT.

## OPINION

Opinion by Chief Justice THOMAS.

Vickie J. Annett Ardoin (Mother) appeals the trial court's order naming Jacqueline G. Ardoin (Stepmother) sole managing conservator and Mother possessory conservator of S.J.A., C.J.A., and N.J.A. Mother's sole issue is that the trial court did not have subject matter jurisdiction.

We disagree. Accordingly, we affirm the trial court's judgment.

## Background[1]

S.J.A. was born on September 24, 1991 in Louisiana. In 1992, Mother married Philip Ardoin (Father) and, on December 23, 1992, C.J.A. was born. N.J.A. was born on June 26, 1995. Father and Mother separated shortly after N.J.A.'s birth. Following the separation, the children continued to reside with Mother in Louisiana.

In 1997, Father and the children moved to Florida, but Mother remained in Louisiana. In November 2000, Father began dating Stepmother. In November 2001, Father and Mother were divorced in Louisiana. The divorce decree named Mother and Father joint managing conservators of the children with Father having the right to determine the primary residence of the children.[2] The children continued to live with Father in Florida.

On July 5, 2002, Father married Stepmother. Mother moved to Florida in 2003. Also in 2003, following a dispute with Mother over comments made to one of the children by their maternal grandmother, Father filed a motion in the 17th Judicial Circuit for Broward County, Florida to, according to Stepmother, "make sure that she wouldn't make mention of that to [the child] again." In 2004, the Florida trial court entered an order requiring Mother to pay child support and addressing health insurance for the children.[3] Nothing in the record demonstrates the Florida court made any modifications to or decisions regarding the custody of the children.

Father died on November 6, 2006. That same day, Mother contacted the children about living with her. The children indicated they did not want to do so. Several days later, Mother went to Stepmother's house with the police in an effort to obtain the children. However, the children were not at home. In December 2006, Mother filed a motion in the Florida court requesting immediate custody of the children. The Florida court did not enter a written ruling on Mother's request, but stated from the bench the children should be given time to grieve Father's death and the parties should seek counseling. The children spent a week with Mother during Christmas, but Mother did not see the children in January 2007.

On February 3, 2007, Mother picked up the children for a weekend visitation. Instead of remaining in Florida, Mother brought the children to Texas where Mother's fiancé and her other children were living. On March 8, 2007, Stepmother filed this suit, seeking custody of the children. The parties subsequently agreed the children would remain with Mother while a home study was conducted, but that Stepmother would have visitation rights. On October 25, 2007, following a bench trial, the trial court named Stepmother sole managing conservator and Mother possessory conservator of the children.

## Standard of Review

 Whether a trial court has subject matter jurisdiction is a question of law we

---

1. Inasmuch as the sole issue is whether the trial court had subject matter jurisdiction, we recite only those facts necessary to the jurisdictional inquiry.

2. The record reflects the divorce decree was reviewed by the trial court, although it is not a part of the appellate record.

3. The Florida order is also not in the appellate record; however, it appears the trial court reviewed the order.

review de novo. *Powell v. Stover,* 165 S.W.3d 322, 324 (Tex.2005) (orig. proceeding); *Seligman–Hargis v. Hargis,* 186 S.W.3d 582, 585 (Tex.App.-Dallas 2006, no pet.). The party initiating suit has the burden to allege sufficient facts to establish subject matter jurisdiction. *In re Forlenza,* 140 S.W.3d 373, 376 (Tex.2004) (orig. proceeding); *Seligman–Hargis,* 186 S.W.3d at 585. We liberally construe the pleadings in favor of the party invoking jurisdiction. *Seligman–Hargis,* 186 S.W.3d at 585; *In re Brilliant,* 86 S.W.3d 680, 684 (Tex.App.-El Paso 2002, no pet.). We must also consider relevant evidence when necessary to resolve the jurisdictional issue. *Seligman–Hargis,* 186 S.W.3d at 585. When an action is grounded in statute, subject matter jurisdiction must be shown under the applicable statute. *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75 (Tex.2000); *In re Barnes,* 127 S.W.3d 843, 846–47 (Tex.App.-San Antonio 2003, orig. proceeding). Subject matter jurisdiction is never presumed, cannot be waived, and may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex. 1993); *Seligman–Hargis,* 186 S.W.3d at 585.

## Applicable Law

█ Jurisdiction over child custody issues in Texas is governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Tex. Fam.Code Ann. §§ 152.201–.317 (Vernon 2002 & Supp. 2008); *Seligman–Hargis,* 186 S.W.3d at 585.[4] Under the UCCJEA, the court that makes the initial "child custody determination" generally retains exclusive continuing jurisdiction over ongoing custody disputes. *Saavedra v. Schmidt,* 96 S.W.3d 533, 541 (Tex.App.-Austin 2002, no pet.). A "child custody determination" is an order of a court "providing for legal custody, physical custody, or visitation with respect to a child." Tex.Fam.Code Ann. § 152.202(3) (Vernon 2002).[5] The parties do not dispute the Louisiana divorce decree provided for the custody of and visitation with the children and, therefore, was a child custody determination. Unless it has temporary emergency jurisdiction over a child, a Texas court does not have jurisdiction to modify a child custody determination made by another state unless the Texas court has jurisdiction to make an initial determination under section 152.201(a) of the family code and:

 (1) the court of the other state determines it no longer has exclusive continuing jurisdiction or that the Texas court would be a more convenient forum; or

 (2) a Texas court or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

Tex. Fam.Code Ann. § 152.203 (Vernon 2002); *In re S.L.P.,* 123 S.W.3d 685, 688 (Tex.App.-Fort Worth 2003, no pet.).

## Residence in Another State

We first consider whether the second prong of the jurisdictional test was met. There is no indication in the record that

---

4. Both Florida and Louisiana have adopted the UCCJEA. *See* Fla. Stat. §§ 61.501–.542 (West 2008); La.Rev.Stat. Ann. §§ 13:1801–.1842 (2008). Although Louisiana adopted the UCCJEA in 2006, the statute was not effective until August 17, 2007. Because none of the affected individuals remained in Louisiana, this does not impact our analysis.

5. Florida's and Louisiana's definitions of "child custody determination" are virtually identical to Texas's statutory definition. *See* Fla. Stat. § 61.503(3); La.Rev.Stat. Ann. § 13:1802(3).

either the Louisiana court or the Florida court determined it did not have exclusive continuing jurisdiction or that Texas would be a more convenient forum. Therefore, we must determine whether the trial court found that the children, a parent, and any person acting as a parent did not continue to reside in either Louisiana or Florida.

In its findings of fact, the trial court found Father was deceased, the children and Mother moved to Garland, Texas on February 3, 2007, and Stepmother lived in Florida. Accordingly, the trial court specifically found no affected individual continued to reside in Louisiana.

■ Turning to Florida, the next issue is whether a Florida court made a child custody determination regarding the children and, if it did, whether Stepmother is a person acting as a parent, as defined by Florida law, who still resides in Florida. A "child custody determination" includes orders governing the custody of and visitation with a child, but does not include an "order relating to child support or other monetary obligation of an individual." FLA. STAT. § 61.503(3).[6] After Father filed suit over the maternal grandmother's comments to one of the children, the Florida court entered an order regarding child support for the children. When, following Father's death, Mother filed what appears to be a petition for habeas corpus seeking custody of the children, the Florida court did not enter an order. Accordingly, nothing in the record supports a finding the Florida court made a child custody determination regarding the children.

However, even assuming the Florida court made a child custody determination in either proceeding filed in that state, we still conclude the second prong of the statutory test is met. The trial court concluded it had jurisdiction "of the parties, of the children, and of the subject matter of this case." It also specifically found neither the children nor a parent continued to reside in Florida, but that Stepmother continued to reside in Florida. The trial court could not have reached the conclusion it had jurisdiction unless it also concluded Stepmother was not a person acting as a parent as defined by Florida law. *See* TEX. FAM.CODE ANN. § 152.203(2).

Under Florida law, a "person acting as a parent" is a person, other than a parent, who (1) has physical custody of the child or had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding, and (2) has been awarded a child custody determination by a court or claims a right to a child custody determination under the laws of Florida. FLA. STAT. § 61.503(13).[7] The trial court found the children lived with Stepmother from 2001 until February 3, 2007, satisfying the first statutory requirement. The trial court did not make any finding regarding the second statutory element. However, an omitted unrequested element can be supplied by presumption if it is supported by evidence. TEX.R. CIV. P. 299; *Davey v. Shaw*, 225 S.W.3d 843, 855 (Tex.App.-Dallas 2007, no pet.). We, therefore, turn to

---

6. *See* TEX. FAM.CODE ANN. § 152.201(3) (child custody determination does not include order relating to child support or other monetary obligation of an individual).

7. Under Texas law, a "person acting as a parent" is a person, other than a parent, "who (A) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and (B) has been awarded legal custody by a court or claims a right to legal custody under the law of this state." TEX. FAM.CODE ANN. § 152.102(13).

whether the record supports a finding Stepmother had not been awarded a child custody determination by a court or claimed a right to a child custody determination under the laws of Florida.

There is no evidence Stepmother has been awarded a child custody determination by a Florida court. Further, there is no evidence Stepmother claimed a right to such a determination under the laws of Florida. Rather, Stepmother claimed a right to a child custody determination under the laws of Texas. Because the record supports an implied finding that Stepmother has neither been awarded a child custody determination by a court nor claimed a right to such a determination under the laws of Florida, Stepmother was not a person acting as a parent as defined by Florida law when she filed this suit. FLA. STAT. § 61.503(13).

We conclude the evidence supports a determination by the trial court that neither the children, a parent, nor a person acting as a parent continued to reside in Florida when this suit was filed. Accordingly, the second prong of the jurisdictional inquiry in section 152.203 is met.

### Initial Determination

We next turn to the first prong of the jurisdictional test—whether the trial court had jurisdiction to make an initial custody determination under section 152.201(a) of the Texas Family Code. A Texas court has jurisdiction to make an initial custody determination if:

(1) Texas is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from Texas but a parent or person acting as a parent continues to live in Texas;

(2) a court of another state does not have home state jurisdiction or the court having home state jurisdiction has declined to exercise jurisdiction on the ground that Texas is the more appropriate forum and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with Texas other than mere physical presence; and

(B) substantial evidence is available in Texas concerning the child's care, protection, training, and personal relationships;

(3) all courts otherwise having jurisdiction have declined jurisdiction on the ground that Texas is the more appropriate forum; or

(4) no court of any other state would have jurisdiction under subdivision (1), (2), or (3).

TEX. FAM.CODE ANN. § 152.201(a) (Vernon 2002). A child's "home state" is the state in which the child lived with a parent or person acting as a parent for at least six consecutive months immediately preceding the filing of the suit. *Id.* § 152.102(7); *see* FLA. STAT. § 61.503(7).

The UCCJEA gives priority jurisdiction to the child's home state. *Powell*, 165 S.W.3d at 325. In determining a child's home state, we focus on the child's physical presence in the state. *Id.* at 328. Here, the children had been in Texas for less than five weeks when Stepmother filed suit. Accordingly, Texas did not have home state jurisdiction. TEX. FAM.CODE ANN. §§ 152.102(7), 152.201(a)(1); *see In re M.G.M.*, 163 S.W.3d 191, 196–97 (Tex. App.-Beaumont 2005, no pet.) (Texas not home state when children lived in Texas for only forty days before suit filed).

We next consider whether Florida had home state jurisdiction at the time this

suit was filed. Florida was clearly the children's home state on November 6, 2006 when Father died. The children lived with Stepmother from November 6, 2006 until February 3, 2007. However, as set out above, Stepmother was not a person acting as a parent as defined by Florida law. Further, the children lived in Texas with Mother for approximately five weeks immediately preceding the filing of this suit. Therefore, the children did not live in Florida with a parent or a person acting as a parent for six consecutive months immediately preceding the filing of this suit, and Florida was not the children's home state on the date suit was filed. *See In re Oates,* 104 S.W.3d 571, 577 (Tex.App.-El Paso 2003, orig. proceeding); *Peterson v. Peterson,* 965 So.2d 1096, 1100 (Ala.Civ. App.2007) (although children lived with maternal grandparents in Alabama for six consecutive months within one year immediately before mother filed petition to modify, Alabama was not children's home state because grandparents were not persons acting as a parent).[8]

▆▆▆▆ The children did not have a home state on March 8, 2007 when Stepmother filed this suit. Therefore, the trial court had jurisdiction to make an initial custody determination under section 152.201(a)(2) if the children and Mother had a significant connection with Texas other than mere physical presence and substantial evidence was available in Texas concerning the children's present or future care, protection, training, and personal re-

lationships. Tex. Fam.Code Ann. § 152.201(a); *Brilliant,* 86 S.W.3d at 690. A high level of physical presence in Texas is not necessary to satisfy the significant-connection standard. *See Forlenza,* 140 S.W.3d at 378. Further, the question is not which state has *the most* significant connection with the children. *Id.; see also In re Brown,* 203 S.W.3d 888, 894 (Tex. App.-Fort Worth 2006, orig. proceeding) (noting when child did not have home state, both Missouri and Texas could have significant connection jurisdiction if statutory requirements met). Rather, in determining whether the record supports a finding the children and Mother have a significant connection with Texas, we look at the nature and quality of the children's contacts with Texas. *Forlenza,* 140 S.W.3d at 377–78.

Mother, Mother's fiancé, and the children's three half-siblings all lived in Texas prior to February 2007 when Mother brought the children to Texas and all maintained a relationship with the children. *See id.* at 377. Evidence regarding where the children lived at the time suit was filed, who cared for the children, and Mother's plans for the children's future care, education, protection, and training were all available in Texas from Mother and other family members. Texas had a significant connection with Mother and the children. Therefore, the trial court had jurisdiction to make an initial child custody determination regarding the children.

---

**8.** Relying on *In re Burk,* 252 S.W.3d 736, 740–41 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding [mand. denied] ), Mother argues Florida had home state jurisdiction if, at some time within six months before this suit was filed, Florida was the children's home state. However, *Burk* involved a child less than six months old who lived in Texas for the first three months of her life and then was taken to Colorado by her mother. Because

the father remained in Texas, the *Burk* court analyzed whether Texas had home state jurisdiction based on its being the child's home state within six months before the filing of the petition with the child being absent from Texas, but a parent remaining in Texas. Here, no parent or person acting as a parent remained in Florida and, therefore, *Burk* is not applicable.

## Conclusion

We conclude the trial court had jurisdiction under section 152.203 of the family code to modify the child custody determination made by another state. Therefore, we overrule Mother's sole issue and affirm the trial court's judgment.