In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00103-CV**
_____

**IN THE INTEREST OF T.K. JR.**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-238,183-A**

**MEMORANDUM OPINION**

Father and Mother appeal the trial court's order terminating their parental rights to their child, T.K. Jr.[1] In a single issue, Father and Mother argue the trial court erred by denying their Pleas to the Jurisdiction. They assert the Texas court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") because Texas is not T.K. Jr.'s "home state." *See*

---

[1]We identify children and their family members in parental-rights termination cases by using either initials or their relationship to the child. *See* Tex. R. App. P. 9.8(a), (b).

Tex. Fam. Code Ann. § 152.201. We conclude the Texas court had jurisdiction under the UCCJEA and affirm the trial court's final termination order.

PERTINENT BACKGROUND

In March 2022, the Texas Department of Family and Protective Services ("the Department") filed an Original Petition for Protection of a Child, for Conservatorship and for Termination in Suit Affecting the Parent-Child Relationship between T.K. Jr. and his parents. The Department attached an affidavit for Emergency Removal in which Schrietta Henson averred that the Department received a report alleging neglectful supervision of two-week old T.K. Jr. by his parents, who lived in Beaumont. Henson stated that a jury had recently terminated the parents' parental rights to T.K. Jr.'s sibling, K.K.,[2] and during the prior case, Mother tested positive for methamphetamines while pregnant with T.K. Jr. Henson explained that Father also tested positive for methamphetamines and the parents had denied Mother was pregnant with T.K. Jr. in the prior termination of Father's and Mother's parental rights as to K.K. After T.K. Jr. was born, the parents hid T.K. Jr. from the Department. Henson further explained that the Department was concerned about T.K. Jr.'s safety and believed the Department should be named T.K. Jr.'s Temporary Managing Conservator.

---

[2]The record reflects that K.K. was born in October 2020. The trial on the termination of Mother's and Father's rights to K.K. occurred in March 2022.

2

The trial court issued an Order of Protection of a Child in an Emergency and Notice of Hearing, finding, among other things, that it had jurisdiction under section 262.002 of the Texas Family Code and naming the Department as temporary sole managing conservator of T.K. Jr. The Department filed a Petition for Writ of Habeas Corpus, stating the parents were illegally restraining T.K. Jr. in Jefferson, County, Texas, and attempting to hide the child from the Department. The Department filed a Motion for Writ of Attachment, asking the trial court to grant a writ to take physical custody of T.K. Jr., who the Department believed was in danger. The trial court issued a Writ of Attachment, ordering the delivery of T.K. Jr. into the possession of the Department.

In April 2022, the 27th Judicial District Court of Louisiana ("the Louisiana Court") issued an Instanter Order for Removal and Provisional Custody to the Department of Children and Family Services, in which the Louisiana Court found there were reasonable grounds to believe T.K. Jr. was in need of care and temporary emergency removal was necessary to secure the child's protection and that continuance of the child in the home of the parents would be contrary to the child's health, safety, and welfare. In its Order, the Louisiana Court found that (1) based on the information provided by the Texas Court, it was necessary for the State of Louisiana to obtain an emergency custody order being that T.K. Jr. was located in Louisiana in Father's custody; and (2) in accordance with the documentation the

Department provided, including a writ of attachment, T.K. Jr. was located in Louisiana after being removed from Texas. After T.K. Jr. was placed in Louisiana's provisional custody, the Louisiana Court vacated its Instanter Order for Removal and Provisional Custody and returned T.K. Jr. to the Department by order of the Texas Court.

Upon T.K. Jr.'s return to Texas, the trial court conducted a hearing in April 2022, during which Schrietta Henson, a conservatorship supervisor with the Department, testified that she was the caseworker in the parents' prior case which resulted in termination of the parents' rights to K.K., and she explained that the case was tried in March 2022, the same month Mother gave birth to T.K. Jr. Henson testified that Mother tested positive for methamphetamines while pregnant, and at one month of age, T.K. Jr. tested positive for methamphetamines and marijuana. Henson explained that the parents did not provide any medical records regarding T.K. Jr.'s birth and while she did not see the child in Texas with the parents, the Department received numerous complaints that the child was in Texas. Henson also explained that the parents' last known address was in Beaumont, but she was unsure of where they currently lived. Henson testified T.K. Jr. was removed from Louisiana. Henson testified that T.K. Jr. was now living in a foster home. As to the removal of T.K. Jr., the Department had concerns about T.K. Jr.'s safety and well-being if T.K. Jr. was returned to Mother and Father and believed it was in T.K. Jr.'s best interest

4

that the Department be appointed as his Temporary Managing Conservator. The trial court found "there was a danger to the physical health or safety of [T.K. Jr.,"] there was an "urgent need for protection require[ing] the immediate removal of [T.K. Jr.,"] "reasonable efforts [had] been made to enable [T.K. Jr.'s return home, but there was] a substantial risk of a continuing danger if [he] [was] returned home[.]" The court also found that appointing T.K.'s parents as his Temporary Managing Conservators would not be in his best interest while appointing the Department as his Temporary Managing Conservator would be in his best interest. Finally, the trial court found that based on the evidence presented in the hearing and on the record, "all necessary prerequisites of the law have been satisfied and that this [c]ourt has jurisdiction of this case and of all parties."

In a status hearing conducted around a month later, Henson testified that it was her understanding that Mother and Father lived in Beaumont, and she confirmed that Mother and Father had recently worked in Beaumont. Mother's attorney asked Henson about Mother's and Father's testimony during the prior trial that ended right before the Department filed the current petition. Mother's attorney asked if Henson had any information that the parents' testimony that they had been working in Louisiana was false, and Henson explained that the parents never provided documentation regarding their employment in Louisiana.

In June 2022, Father and Mother filed Pleas to the Jurisdiction, arguing the Texas Court lacked jurisdiction over T.K. Jr. because neither parent resided in Texas when the suit commenced, and Louisiana is T.K. Jr.'s home state. Father and Mother alleged that T.K. Jr. was born and resided in Louisiana, and they argued the Department failed to show that Louisiana had declined jurisdiction and that the Texas court did not have jurisdiction to determine child custody under section 152.201. *See id.*

In August 2022, the trial court conducted a hearing on the Pleas to the Jurisdiction, during which Kenya Holder-McCurley, the caseworker on the parents' previous conservatorship case, testified that during the previous case the parents were living in Beaumont, Texas. Holder-McCurley also testified that the parents had previously provided a one-year lease for the Beaumont home that did not expire until August 2022, both parents were employed in Beaumont, and Mother was receiving pregnancy benefits in Texas. Holder-McCurley also explained that the parents were present in Texas after T.K. Jr. was born in March, but she did not know where T.K. Jr. was born. Holder-McCurley testified that she reviewed a document showing T.K. Jr. had received some medical care in Louisiana.

Holder-McCurley testified that during the previous trial, the parents admitted they only went to Louisiana to have T.K. Jr. so the Department could not be involved. Holder-McCurley explained that Father had previously testified that he

lived in Louisiana, and he showed her his Louisiana identification card which was issued in June 2022. Holder-McCurley also explained the Department received tips that T.K. Jr. was living in both Texas and Louisiana, and it took a while for the Department to locate T.K. Jr. Holder-McCurley testified that her supervisor saw T.K. Jr. in Texas, and when she went to the parents' home in Beaumont, she saw diapers in the trash and a car seat in the car, but she never saw T.K. Jr.

Holder-McCurley testified that T.K. Jr. was removed from Louisiana, but she stated that the majority of the actions leading to T.K. Jr.'s removal occurred in Texas during the Department's previous case with the parents, which included Mother testing positive for methamphetamine while pregnant with T.K. Jr. Holder-McCurley testified that in May 2022, Mother was arrested at the Beaumont home, and since that arrest, she heard Father say he was residing in Texas.

Mother testified that she received her first Louisiana identification card in June 2022, and she explained that during the prior trial regarding K.K., she was living in Louisiana with Father, who was working there. Mother testified that she had T.K. Jr. in Louisiana and gave Father's mother temporary guardianship, and she never moved back to Texas. Mother explained T.K. Jr. has a blood disorder and received care in Louisiana. Mother testified that the Department removed T.K. Jr. from Father's mother even though the child had never lived in Texas.

7

Mother explained that she lived most of her life in Texas, but she stopped living at the Beaumont home in February 2022 because the city red tagged the home as unlivable. Mother testified that T.K. Jr.'s case was filed in March 2022, and she did not get her Louisiana identification card until June 2022 because she had an outstanding warrant. Mother denied receiving benefits in Texas and claimed she received Medicaid benefits in Louisiana.

Father testified that he had resided in Louisiana for the past year and a half, and he had leased a residence in Texas to comply with the Department's request regarding his other child, K.K. Father testified T.K. Jr. was born in Louisiana and received Medicaid benefits in Louisiana. Father explained that T.K. Jr. had never lived or been in Texas until the Department removed T.K. Jr. from Father in Louisiana.

The trial court found it had initial child custody jurisdiction under section 152.201 of the Family Code. *See id.* § 152.201(a)(1), (2). The trial court found that Texas was T.K. Jr.'s home state when the action was filed; a court of another state does not have jurisdiction; the child and at least one parent has a significant connection with this state; and there is substantial evidence available in this state about the child's care, protection, training, and personal relationships. *See id.* § 152.201(a)(1), (2). The trial court denied Father's and Mother's Pleas to the

Jurisdiction. In March 2023, a jury terminated Father's and Mother's parental rights to T.K. Jr.

ANALYSIS

In their sole issue, Father and Mother complain the trial court lacked subject matter jurisdiction under the UCCJEA, because Texas is not T.K. Jr.'s "home state." *See* Tex. Fam. Code Ann. § 152.201.[3] Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). The construction of the "home state" provision in section 152.201 of the Texas Family Code is also a question of law that we review

---

[3]We note that the Texas Supreme Court stated there is an unresolved issue among the states as to whether the UCCJEA is a subject-matter jurisdiction statute, yet the majority of the Court in resolving the decision we refer to decided not to reach the issue. *See In re D.S.*, 602 S.W.3d 504, 517–18 (Tex. 2020). There, the Court stated: "We observe that of the states that have considered the jurisdictional issue, some refer to the UCCJEA as a subject-matter-jurisdiction statute, while others do not. The issue is not settled." *Id.* (citations omitted). In the concurring opinion written by Justice Lehrmann and joined by Justices Devine and Busby, the concurring Justices would have reached the issue and concluded that "a court's lack of 'jurisdiction' under the UCCJEA does not equate to a lack of 'subject matter jurisdiction' that deprives the court of the power to hear and decide the case, thereby endangering a judgment's finality." *Id.* at 518 (Lehrmann, J., concurring). The concurring opinion reasoned that "the Family Code provides that a final order in a custody proceeding rendered by a court other than the court with continuing, exclusive jurisdiction over that proceeding is 'voidable,' not void. Tex. Fam. Code § 155.104(b)." *In re D.S.*, 602 S.W.3d at 520. The concurrence explained it would be inconsistent with one of the UCCJEA's primary concerns, which is "avoiding relitigation of custody judgments," to treat it as a subject-matter jurisdiction statute. *Id.* Accordingly, the concurring Justices would "treat a court's erroneous application of the UCCJEA's requirements as [ ] error, not lack of subject matter jurisdiction." *Id.* at 520–21.

de novo. *In re C.G.*, Nos. 09-13-00289-CV, 09-13-00290-CV, 2013 WL 6529504, at *1 (Tex. App.—Beaumont 2013, pet. denied) (mem. op.) (citing *Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005)). Subject matter jurisdiction is essential to a court's authority to decide a case and is never presumed and cannot be waived. *Tex. Ass'n of Bus. v. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Jurisdiction over interstate child custody matters is governed by the UCCJEA. *Powell v. Stover*, 165 S.W.3d 322, 324 (Tex. 2005); *In re C.E.-A.A.*, 521 S.W.3d 893, 898 (Tex. App.—San Antonio 2017, no pet.). "For purposes of the UCCJEA, jurisdiction is determined at the time child-custody proceedings commence." *In re D.S.*, 602 S.W.3d 504, 513 (Tex. 2020) (citation omitted). "The UCCJEA was designed . . . to clarify and to unify the standards for courts' continuing and modification jurisdiction in interstate child-custody matters." *In re Forlenza*, 140 S.W.3d 373, 374 (Tex. 2004) (orig. proceeding). Texas has adopted the UCCJEA, which is codified in Chapter 152 of the Family Code. Tex. Fam. Code Ann. §§ 152.001–.317. Louisiana has also adopted the UCCJEA. *See* La. Rev. Stat. Ann. §§ 13.1801–.1842; *In re S.J.A.*, 272 S.W.3d 678, 682 n.4 (Tex. App.—Dallas 2008, no pet.).

When a jurisdiction issue is not intertwined with the merits of a plaintiff's claim, as is the case here, "disputed fact issues are resolved by the court, not the jury." *City of San Antonio v. Arciniega*, No. 04-19-00467-CV, 2020 WL 214759, at *3 (Tex. App.—San Antonio Jan. 15, 2020, no pet.) (mem. op.) (quoting *Tex. Dep't*

10

*of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). "On review, we presume the trial court found the facts in a manner that supports its order." *Id.* (quoting *City of San Antonio v. Cervantes*, 521 S.W.3d 390, 394 (Tex. App.—San Antonio 2017, no pet.)). On appeal, any fact findings made to resolve the jurisdictional issue may be challenged for legal and factual sufficiency, including implied findings if written findings and conclusions are not issued. *Id.* (citations omitted). In a sufficiency review, the "fact finder is 'the sole judge[] of the credibility of the witnesses and the weight to be given their testimony[,]'" and the "fact finder 'may choose to believe one witness and disbelieve another.'" *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)). We presume the fact finder credited testimony favorable to the ruling, disbelieved testimony contrary to it, and resolved all conflicts in accordance with the ruling. *Id.* (citing *City of Keller*, 168 S.W.3d at 820).

Under the UCCJEA, the state court that has made a child custody determination generally retains exclusive, continuing jurisdiction over any ongoing custody disputes. *Saavedra v. Schmidt*, 96 S.W.3d 533, 541 (Tex. App.—Austin 2002, no pet.); *see* Tex. Fam. Code Ann. § 152.202. A "child custody determination" is defined as "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child" and includes "permanent, temporary, initial, and modification orders." Tex. Fam. Code Ann. §

11

152.102(3). An "initial child custody determination" is the first custody determination concerning a particular child. *Id.* § 152.102(8). A proceeding that is brought to terminate parental rights falls within the UCCJEA's definition of a "child custody proceeding." *See id.* § 152.102(4) ("The term includes a proceeding for . . . termination of parental rights.").

Jurisdiction to make an initial child custody determination requires that (1) this state be the home state of the child on the date the proceeding commences, or was the home state within six months before the commencement and the child is absent from the state but a parent or person acting as a parent continues to live in state; (2) a court of another state does not have jurisdiction under subdivision (1), or a court of the child's home state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum and the child and at least one parent have a significant connection with this state other than mere presence and there is substantial evidence in this state concerning the child; (3) all courts having jurisdiction under subdivisions (1) and (2) have declined to exercise jurisdiction on the ground that this state is the more appropriate forum; or (4) no court of any other state would have jurisdiction under subdivisions (1)–(3). *Id.* § 152.201. In the case of a child less than six months of age, the child's "home state" is the state in which the child lived from birth with a parent or a person acting as a parent. *Id.* § 152.102(7). In determining a child's home state, the "key inquiry is the child's

12

physical presence in the state; the parent's legal residency is a lesser consideration." *In re D.S.*, 602 S.W.3d at 513 (citation omitted).

An exception exists for temporary emergency jurisdiction when the child is present in this state and has been abandoned or it is "necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subject to or threatened with mistreatment or abuse." Tex. Fam. Code Ann. § 152.204(a). Such emergency jurisdiction empowers the district court to act only on a short term, temporary, emergency basis when the potential for immediate harm exists. *In re S.J.*, 522 S.W.3d 576, 580 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding [mand. denied]). Section 152.204(b) provides:

> If there is no previous child custody determination that it is entitled to be enforced under this chapter and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 152.201 through 152.203. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

Tex. Fam. Code Ann. § 152.204(b).

The Texas Court issued an Order of Protection of a Child in an Emergency and a Writ of Attachment, ordering the delivery of T.K. Jr. into the possession of the Department, but the Department failed to locate T.K. Jr. in Texas. The record shows

13

that after the Department provided the Louisiana Court with information regarding T.K. Jr., the Louisiana Court found there were reasonable grounds to believe that an emergency removal was necessary and issued an Instanter Order for Removal and Provisional Custody to the Louisiana Department of Children and Family Services. Specifically, the Louisiana Court found:

> Based on the information provided by the Jefferson Count[y], Texas / 279 Judicial District Court it was necessary for the Department of Children and Family Services / State of Louisiana /27th Judicial Court to obtain an emergency custody orders, being that [T.K. Jr.] was located in the state of Louisiana.
>
> [T.K. Jr.] was found in the custody of [Father] in the state of Louisiana.
>
> In accordance with the documentation provided by the Texas Department of Family Services by order of the 279th District Court of Jefferson County, Texas, a writ of attachment (warrant to take physical custody of the child/ [T.K. Jr.]). [T.K. Jr.] was located in Louisiana after being removed from another state, Jefferson County, Texas.

After the Louisiana Department located T.K. Jr. in Louisiana, T.K. Jr. was returned to the Department in Texas, and the Louisiana Court vacated its Order.[4]

Holder-McCurley testified that the parents were present in Texas after T.K. Jr.'s birth. Henson and Holder-McCurley also testified that the Department received complaints that T.K. Jr. was living in Texas, and despite the Department's efforts to immediately follow up on the complaints, the Department was unable to locate T.K.

---

[4]The decision by the Louisiana Court to vacate its order is some evidence from which the trial court could reasonably conclude that the Louisiana Court declined to exercise jurisdiction over T.K. Jr.

14

Jr. in Texas. Holder-McCurley further testified that her supervisor saw T.K. Jr. in Texas, and she explained that the parents tried to avoid the Department's involvement. Although the parents testified that TK. Jr. was born and raised from birth in Louisiana, the trial court could have believed the Department and disbelieved the parents. *See Arciniega*, 2020 WL 214759, at *3. Based on the facts contained in the record, we conclude the trial court correctly denied the parents' Pleas to the Jurisdiction because Texas became T.K. Jr.'s home state when the Texas Department filed its Original Petition for Protection of a Child, for Conservatorship and for Termination in Suit Affecting the Parent-Child Relationship between T.K. Jr. and his parents, which sought to protect T.K. Jr. from threatened mistreatment and abuse under its temporary emergency jurisdiction. *See* Tex. Fam. Code Ann. § 152.204(b). The record also shows that the Louisiana Court returned T.K. Jr. to the Texas Department and did not dispute the authority of the Texas Court's temporary emergency jurisdiction, and the Louisiana Court's dismissal of its Instanter Order shows the Louisiana Court declined to exercise jurisdiction and deferred to Texas. *See id.* § 152.201(a)(2), (4).

Since a child custody proceeding had not commenced in a court of a state having jurisdiction under Sections 152.201 through 152.203, the Texas Court's child custody determination made under section 152.204 under its temporary emergency jurisdiction became a final determination, and as such it made Texas T.K. Jr.'s home

state. *See id*. § 152.204(b). Since the trial court's finding that Texas is T.K. Jr.'s home state is reasonable under the evidence in the record, we conclude the Texas Court had jurisdiction to make an initial child custody determination under section 152.201 and the evidence supports the trial court's denial of Mother's and Father's Pleas to the Jurisdiction. Accordingly, we overrule Father's and Mother's sole issues and affirm the trial court's final termination order.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on July 12, 2023
Opinion Delivered August 3, 2023

Before Golemon, C.J., Horton and Johnson, JJ.