**Affirmed and Memorandum Opinion filed March 26, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00572-CV

## IN THE INTEREST OF J.S.N., A CHILD

**On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2018-84640**

## MEMORANDUM OPINION

This appeal involves jurisdiction of a child custody matter. P.K.N. (Father), appeals the trial court's order granting primary custody of J.S.N. (the child) to M.R. (Mother). In a single issue on appeal Father contends the trial court erred in denying his plea to the jurisdiction. We affirm.

### BACKGROUND

Mother and Father were divorced in Michigan in 2016 when the child was two years old. The child was born in Michigan and is a United States citizen. From January 2016 through June 2017 the parents exercised joint custody of the child

alternating three-month possession periods. At the time Father lived in Michigan and Mother lived in Houston, Texas. In June 2017 Father took the child to India, purportedly with Mother's permission. Father told Mother he wanted to exercise his three-month parenting time in India rather than Michigan. The child remained in India for more than a year until November 2018. At the heart of this dispute are accusations by both parents that the other parent abducted the child. Mother asserted that Father abducted the child when he kept him in India beyond his three-month possession period. Father asserted Mother abducted the child from India when she retrieved him and brought him back to the United States in November 2018.

The parties' divorce decree was signed by a Michigan court on January 21, 2016. The Michigan decree ordered joint custody of the child on a three-month rotating possession schedule. The Michigan order further prohibited either parent from exercising parenting time in a nation that was not a party to the Hague Convention on the Civil Aspects of International Child Abduction unless both parents provided the court with written consent to allow parenting time in a nation not a party to the convention. India is not a party to the Hague Convention.

## I.  Events in India

In June 2017 Father asked permission to travel to India with the child to exercise his parenting time. Under the Michigan decree Mother's parenting time would begin in September 2017. Mother agreed to allow Father to take the child to India with the understanding that Mother would begin her parenting time three months later in September. While Father and the child were in India Father notified Mother that his father was terminally ill and asked permission to keep the child an additional three months in India. Mother agreed to the additional three months to allow Father to spend time with his terminally-ill father.

Mother had planned a vacation to India to visit her family in 2017, and

traveled to India in September 2017 to visit the child. According to Mother, Father denied her access to the child except for two days during the month Mother spent in India. Mother did not agree to allow the child's residence to be changed to India. When it became clear that Father would not return the child to the United States, Mother worked with the United States State Department to have a notice issued by Interpol indicating the child had been kidnapped by Father.

Father filed a petition in a family court in India in which he asserted that the Indian court had exclusive jurisdiction over the child and that the Michigan court had lost jurisdiction. Mother filed a counter-petition in the Indian court stating that the child was an American citizen who had been illegally and unlawfully removed and retained in India. Mother requested that the child be returned to the United States. In September 2018 the Indian court granted Mother a period of possession with the child but required her to tender her passport. The Indian court refused to return Mother's passport unless she returned the child to Father.

On November 15, 2018, a hearing was scheduled on the parties' competing petitions for custody in the Indian court. Father left the child with his parents and traveled to another town to attend the hearing. On that day, Mother dismissed her counter-petition in the Indian court, and retrieved the child from Father's parents' home with the help of two men who had been helping her while she was in India. Mother testified that one of the men was an acquaintance who came with her to protect her from potential physical assault by Father. Given Father's history of domestic violence and the "hostile nature of [her] in-laws" Mother did not feel comfortable going to her in-laws' home alone.

After retrieving the child Mother drove to a nearby town with the goal of taking a flight to Delhi. The United States State Department helped Mother obtain a duplicate passport for the child because he had been kidnapped. Mother attempted

3

to board a plane in Delhi with the child but was denied access. Mother was forced to travel 24 hours via land to Nepal where she could travel by air to China and eventually back to Texas.

On April 17, 2019, the Indian family court issued an order in which it stated that Father had been found guilty of parental kidnapping by Interpol. The Indian court subsequently issued an order in which it found that Father violated the Michigan order by taking the child to India without the Michigan court's approval. The Indian court rejected Father's claim that Mother gave him permission to take the child to India. On December 20, 2019, the Indian court dismissed Father's petition seeking custody in India. Father appealed, and the Indian Supreme Court reversed the family court's decision, and found the Indian court had jurisdiction over the dispute.

## II.    Events in Michigan

On August 16, 2018, while the child was still being held in India by Father, Mother filed in the Michigan court an "Ex Parte Motion to Order Return of the Child from India." Two days later, the Michigan court entered an "Ex Parte Order for Immediate Return of the Minor Child." Upon learning the child was not returned, the court entered an "Order to Appear and Show Cause for Violating Judgment of Divorce" requiring Father to appear with the child. Father did not appear with the child in the Michigan court.

On October 1, 2018, the Michigan court signed an order declining jurisdiction over the custody proceedings. The court's order noted that Mother had lived in Texas since 2015, and Father took the child to India on June 11, 2017, and had violated the court's orders by failing to return with the child.

4

### III.   Events in Texas

Mother returned with the child to Houston, Texas, and filed a motion to modify the Michigan custody order in a Harris County court. In Mother's motion to modify she alleged Father "wrongfully abducted and illegally retained" the child in India, and refused to return the child.

In response to Mother's motion, Father filed a special appearance, plea to the jurisdiction, and motion to dismiss. As relevant to this appeal, Father alleged Texas did not have jurisdiction to modify the Michigan order under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA). Father alleged that because Michigan declined jurisdiction, Texas could only exercise jurisdiction if it had jurisdiction to make an initial child custody determination under Family Code section 152.201, which prescribes home-state jurisdiction. Father alleged that India became the child's home state as of December 11, 2017, after the child lived continuously with Father in India since June 11, 2017. Father alleged, therefore, that under the UCCJEA, India was the child's home state, not Texas.

Father swore in an affidavit attached to his plea to the jurisdiction that Mother "and two henchmen criminally trespassed into my home at Tirupati, assaulted my 70 year old mother and my housekeeper, and violently removed [the child] from my house." Father attached to his motion a petition he filed in India seeking custody of the child.

Mother responded to Father's plea to the jurisdiction and alleged that Father abducted the child by retaining him in India beyond the original time to which Mother agreed. Mother asserted Father could not use the wrongful abduction of the child to establish home state residency.

On March 4, 2019, the Harris County trial court held a hearing on Father's

5

plea to the jurisdiction. At the hearing Mother testified that in June 2017 she agreed that Father could travel with the child to India. Under the decree, Mother's parenting time would begin in September 2017. Mother traveled to India to visit the child in September 2017. Mother testified that she never intended to move to India and that she did not seek a custody determination from the courts of India. In 2017 Mother was a staff physician at Baylor College of Medicine, and at the time of the hearing she was a professor at Baylor College of Medicine. Mother did not seek employment in India. While Mother agreed that Father could travel to India with the child, she never agreed to allow the child's residence to be changed to India. Father had taken the child to India two times before and had timely returned the child to the United States each time. Mother did not sign medical consent forms permitting Father to make medical decisions concerning the child. Mother provided consent for Father and the child to travel to India with the understanding that they would return within three months. Mother agreed to allow the child to stay an additional three months with Father in September 2017 because Father claimed that his father was terminally ill. Mother traveled to India to see the child, but Father denied access to the child. Mother did not threaten Father or any members of his family.

On March 21, 2019, the hearing resumed, and Father testified via Zoom. Father testified that Mother consented to him taking the child to India in June 2017 with the condition that when Mother came to India on vacation in September 2017 that the child could stay with her and her parents for that month. Contradicting Mother's testimony, Father testified that he and Mother agreed to both move to India with the child. Father accused Mother of kidnapping the child. Father testified that if he kept the child in India he might travel to the United States once a year, or once every two years. On the record, the trial court noted that this testimony conflicted with Father's deposition testimony in which he stated that he never planned to return

6

the child to the United States.

On May 3, 2019, the Harris County trial court denied Father's plea to the jurisdiction and Father requested findings of fact and conclusions of law. The trial court issued temporary orders designating Mother as the temporary sole managing conservator and granting Father periods of possession. On March 1, 2023, after Father filed a motion to reconsider, the trial court signed another order denying Father's plea to the jurisdiction in which the trial court found that the child had no home state at the time the SAPCR commenced in Harris County.[1]

On May 16, 2023, the trial court signed a final order after a bench trial. The trial court determined that the Texas court had jurisdiction over the child and the Michigan order precluded the courts of India from assuming jurisdiction. The trial court further found that the child was wrongfully detained in India and the time he spent in India could not be considered for purposes of determining home state jurisdiction because a prior order prohibited Father from seeking to establish the child's residency in India. The trial court determined that Father "engaged in a scheme to lure the child to India so that he might wrongfully retain and abduct the child for purposes of seeking to establish jurisdiction improperly in India, and to withhold the child from [Mother]." The trial court went on to award sole managing conservatorship to Mother.

On July 18, 2023, the trial court signed findings of fact and conclusions of law. As pertinent to Father's appeal challenging jurisdiction, those findings were as follows:

> 7.    The Jan. 21, 2016 Michigan Judgment of Divorce is the prior controlling custody order, which was never modified by the

---

[1] On December 13, 2021, Mother's suit affecting the parent-child relationship (SAPCR) was dismissed for want of prosecution, but later reinstated on March 9, 2022.

Michigan Court.

8. It is this prior order for which modification is being sought in this SAPCR proceeding here.

22. With the parties having agreed that [Father] could take [the child] to India for short periods to visit family, the Michigan order confirmed that a party's physical possession of the child would not affect legal residence for custody jurisdiction unless both parties agreed.

23. [Mother] never gave permission to [Father], either in writing or verbally, for [the child's] legal residence to be changed to India under the Michigan order.

26. The parties had included the non-Hague Country provision in the Michigan order specifically in reference to India, and this was to address any concern that [Father] might try to take [the child] to India for purposes of establishing child custody jurisdiction there.

39. [Father] asked [Mother] to extend the possession period to six months on and off, saying that he needed the extra time in India because of his sick father.

40. However, [Father] admitted in deposition testimony that he had no pressing reason to stay longer in India, and that his father was not terminally ill and did recover.

42. However, [Father] would later use this six-month period of possession as his primary argument for saying that India had home-state custody jurisdiction, to the exclusion of Texas or Michigan.

43. This was part of an ill-intentioned ruse by [Father] to abduct [the child] and to wrongfully retain [the child] away from [Mother] in India.

45. [Father] falsely claimed that [Mother] had agreed to relocate herself to India and that she was looking for jobs in India.

46. This was false. [Mother] had a prestigious job as a professor for Baylor College of Medicine and was never considering quitting her medical career in Texas to go to India, and she did not search for jobs in India.

56. A 9/20/2018 [Michigan] order was issued for [Father] to return

8

[the child] to the United States. [Father] did not comply.

57. The Michigan court also issued a show cause order against [Father] expressly finding that [Father] had wrongfully retained [the child] in India and had failed to return the child to [Mother] for her possession period.

58. The Michigan court issued another order requiring [the child] to be returned to [Mother], that she was to have possession under the Michigan order.

59. [Father] failed to comply with any of these orders. Once the Michigan court realized it could do nothing, it declined to exercise its jurisdiction as an inconvenient forum. It did not, however determine that India had child custody jurisdiction, and the Michigan orders for the return of the child had found that [Father] was guilty of wrongfully retaining the child.

70. After [an Indian court gave Mother only two days' visitation with the child], [Mother] approached the United States Department of State for help.

71. At the request of the State Department, Interpol issued a Yellow Notice regarding [the child], noting his wrongful abduction, which was admitted as PX-15.

73. The State Department obtained replacement passports for [the child], and helped arranged [Mother's] potential return to the United States. During [Mother's] period of possession, [Mother] took [the child] and then returned with him to Texas.

77. Over the course of the history of this proceeding, [Father] has testified to this Court multiple times, and the Court does not find him to be a credible witness. Also admitted as evidence was [Father's] deposition taken in this case in which he made many inconsistent statements under oath.

80. As to [Father's] plea to the jurisdiction, [Father] wrongfully abducted and retained the child in violation of the Michigan orders, under which India could not have acquired child custody jurisdiction.

81. Because [Father] could not wrongfully establish jurisdiction in India, which did not also issue a child custody determination, and because Michigan had declined jurisdiction, there was no

exercising home state jurisdiction, and the Court found that it had jurisdiction to issue a custody determination under Tex. Fam. Code § 152.201(a)(4).

In the trial court's conclusions of law, the court found it had jurisdiction pursuant to section 152.201[(a)](4) of the Family Code, and found that Mother was entitled to a modified custody order based on substantial and material change in circumstances and best interest of the child. *See* Tex. Fam. Code § 156.101.

Father timely appealed the trial court's SAPCR judgment including the denial of his plea to the jurisdiction.

ANALYSIS

In a single issue on appeal Father asserts the trial court lacked jurisdiction over the SAPCR because India was the child's home state at the time the modification suit was filed. Father does not challenge any other portion of the trial court's judgment. Mother did not file a responsive brief.

## I. Standard of Review

Whether a trial court has jurisdiction under the UCCJEA is a matter of subject-matter jurisdiction. *In re Salminen*, 492 S.W.3d 31, 38 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) ("Subject matter jurisdiction in child custody matters is determined by reference to the UCCJEA, set out in Family Code Chapter 152."). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *City of Houston v. Williams*, 353 S.W.3d 128, 133–34 (Tex. 2011). When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

10

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id*. at 227. Evidentiary review is confined to evidence relevant to the jurisdictional issue, and our task is to determine whether a fact issue exists. *Id*.; *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). If the plaintiff's factual allegations are challenged with supporting evidence, to avoid dismissal, the plaintiff must raise a genuine issue of material fact to overcome the challenge of the trial court's subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 221. If the evidence creates a fact issue as to the jurisdictional issue, the trial court must deny the plea to the jurisdiction and the fact issue is left for the fact finder to resolve. *Id*. at 227–28. However, if the relevant evidence fails to raise a fact issue on the jurisdictional issue, the trial court grants the plea to the jurisdiction and rules on jurisdiction as a matter of law. *Id*. at 228.

## II. Uniform Child Custody Jurisdiction and Enforcement Act

The UCCJEA, which has been adopted by most states, helps ensure custody determinations are "rendered in [the] State which can best decide the case in the interest of the child." *In re D.S.*, 602 S.W.3d 504, 513 (Tex. 2020) (quoting Unif. Child Custody Jurisdiction & Enf't Act, § 101 cmt., 9 U.L.A. 657 (Nat'l Conference of Comm'rs on Unif. State Laws 1999)). The law is designed to deter child abductions and minimize "the shifting of children from State to State," which can adversely affect their well-being. *Id*. The UCCJEA advances an overarching objective of expediency and stability in an increasingly mobile world by helping prevent manipulation of the system and undue complication of child-custody disputes, which can occur when a child is moved from one state to another. *Id*. The text of the UCCJEA explicitly states that foreign countries are treated as "states."

Tex. Fam. Code § 152.105(a).

Though Texas district courts have general jurisdiction over child-custody matters, our Legislature adopted the UCCJEA in 1999 as Chapter 152 of the Family Code, and the UCCJEA articulates circumstances under which a court has, or loses, jurisdiction over child-custody determinations. *See* Tex. Fam. Code § 152.201(a). For purposes of the UCCJEA, jurisdiction is determined at the time child-custody proceedings commence. Tex. Fam. Code § 152.201(a).

### III. Texas court's jurisdiction over modification proceeding

Generally, under the UCCJEA, the court that makes the initial child custody determination will retain exclusive continuing jurisdiction over ongoing custody disputes. *In re D.A.P.*, 267 S.W.3d 485, 487 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Texas state courts lack subject-matter jurisdiction to modify the child-custody determinations of a court in another state unless the requirements of section 152.203 of the Family Code are satisfied. *See* Tex. Fam. Code § 152.203.

The UCCJEA provides that a Texas court has jurisdiction to modify orders from another state that affect the parent-child relationship if the following requirements are met:

> • Texas would have jurisdiction to make an initial determination under either UCCJEA section 152.201(a)(1) ("home-state jurisdiction") or (a)(2)("significant connection jurisdiction"), and
>
> • the court of the other state determines it no longer has exclusive continuing jurisdiction under section 152.202 or that a court of this state would be a more convenient forum under section 152.207.

*See* Tex. Fam. Code § 152.203.[2]

Under this two-pronged analysis, we first examine whether Texas would have jurisdiction to make an initial determination of custody under either section 152.201(a)(1)'s home-state jurisdiction or under section 152.201(a)(2)'s significant-connection jurisdiction, recognizing that Texas needs to meet only one of the subsections of 152.201(a) to satisfy the first prong. *In re S.L.P.*, 123 S.W.3d 685, 688 (Tex. App.—Fort Worth 2003, no pet.). We then address the second prong and determine whether the state making the initial child-custody decision—in this case Michigan—concluded either that it no longer possesses continuing jurisdiction or that a Texas court would be a more convenient forum. *See* Tex. Fam. Code §§ 152.202; 152.207.

We will summarize the first two possible bases of jurisdiction in Texas and then examine whether any of the two authorizes a Texas court to modify the Michigan court's custody determination.

(1) Home State Jurisdiction—A Texas court has jurisdiction if Texas is the state in which a child lived with a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from the state, but a parent continues to live in Texas. *See* Tex. Fam. Code §§ 152.102(7), 152.201(a)(1).

The undisputed facts compel the conclusion that Texas was not the home state of the child at the time Mother filed her motion to modify. He did not live in Texas

---

[2] Father initially contends that the trial court erred in finding it had "default jurisdiction" under section 152.201(a)(4). While we agree the default jurisdiction portion of the code does not apply to a modification proceeding, we review whether the trial court had subject-matter jurisdiction de novo and will uphold the trial court's finding of jurisdiction if it is correct under the applicable Family Code sections.

13

for six months before Mother filed the motion to modify. The trial court found that the child did not have a home state at the time the SAPCR commenced.

(2) Significant Connection Jurisdiction—A Texas court may also have jurisdiction if no court from another jurisdiction qualifies as the home state of the child under (1) above or the home state court of the child has declined to exercise jurisdiction on the ground that such court is an inconvenient forum or due to unjustifiable conduct (such as kidnapping) by a person seeking to invoke that court's jurisdiction and the child and at least one parent have significant contacts with Texas. *See* Tex. Fam. Code §§ 152.201(a)(2), 152.207, 152.208.

For the reasons stated below, we conclude the trial court had significant connection jurisdiction under section 152.201(a)(2).

## IV. First prong—jurisdiction to make initial custody decision

Under the first prong of the statutory test to determine whether the trial court had subject-matter jurisdiction over Mother's SAPCR to modify the Michigan court's order concerning child custody, we examine whether Texas would have jurisdiction to make an initial custody determination under either section 152.201(a)(1) or (2). *See* Tex. Fam. Code § 152.203. To recap, section 152.201(a)(2) provides, in pertinent part, that a Texas court may make an initial child-custody determination when the child and at least one of the child's parents has a significant connection with Texas (subsection A) and when substantial evidence is available in Texas concerning the child's protection, training, and personal relationships (subsection B). *See* Tex. Fam. Code § 152.201(a)(2)(A), (B).

Since the child did not have a home state at the time Mother filed the motion to modify, the trial court had jurisdiction to make an initial custody determination under section 152.201(a)(2) if the child and Mother had a significant connection with

Texas other than mere physical presence and substantial evidence was available in Texas concerning the child's present or future care, protection, training, and personal relationships. Tex. Fam. Code § 152.201(a); *In re Brilliant*, 86 S.W.3d 680, 690 (Tex. App.—El Paso 2002, no pet.). A high level of physical presence in Texas is not necessary to satisfy the significant-connection standard. *In re S.J.A.*, 272 S.W.3d 678, 685 (Tex. App.—Dallas 2008, no pet.).

Looking to whether the child and at least one of his parents has a significant connection with Texas and whether substantial evidence is available in Texas concerning the child's protection, training, and personal relationships, the record before us shows the following. Mother has resided in Texas since 2015. The child and Mother have resided in Texas since November 2018 when Mother retrieved the child from India. Mother testified she has a support group in Texas consisting of friends and family. *See In re Forlenza*, 140 S.W.3d 373, 377 (Tex. 2004) (recognizing fact that children's relatives resided in Texas and maintained relationship with children constituted a significant connection to Texas). Since the child's return from India Father has not visited him once. Father communicated with the child via text messages and emails. Father threatened Mother with criminal charges in India impeding her ability to visit her family.

The evidence supports the determination that the child and Mother have a significant connection with Texas and that substantial evidence is available in Texas concerning the child's protection, training, and personal relationships. *See id.*; *see also Cortez v. Cortez*, 639 S.W.3d 298, 309 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("One party's efforts to thwart the other party's rights to access to the child may be considered in the court's analysis under Section 152.202."); *In re Brilliant*, 86 S.W.3d at 692 (court was "disinclined to accord much weight to attachments" child may have developed in Massachusetts when mother moved her there "in

complete and utter disregard of a court order" to remain in Texas). Consequently, in determining whether the child had a significant connection to Texas, we cannot ignore evidence of Father's continuous disregard of the divorce decree and his thwarting of Mother's rights to access to the child. Thus, the first prong of section 152.203's modification jurisdiction is established.

## V. Second prong—when home-state court determines that it no longer has exclusive continuing jurisdiction

A court in Texas has jurisdiction to modify another court's decree if the court of the other state determines it no longer has exclusive continuing jurisdiction under section 202 of the UCCJEA. *See* Tex. Fam. Code § 152.203(1).

Mother initially filed a motion to modify in the Michigan court. The record contains an October 1, 2018 order from the Michigan court declining jurisdiction on the grounds that Mother lived in Texas at the time and since 2015, and Father took the child to India and expressed a desire to remain in India with the child indefinitely. The Michigan court declined exclusive continuing jurisdiction as an inconvenient forum pursuant to section 207 of the UCCJEA. *See* Mich. Comp. Laws § 722.1202(2).

Applying the non-exclusive inconvenient forum factors, we note that Mother and the child have lived in Texas since November 2018; thus they have resided outside the home state of Michigan for almost five years before the trial court made its custody decision. Mother testified that Father engaged in domestic violence and she feared both him and his parents. The Harris County trial court's order was signed after the Michigan court declined jurisdiction and recites findings that the Michigan court declined jurisdiction. The record supports the trial court's finding that the Michigan court declined jurisdiction as an inconvenient forum.

16

## VI. Father's assertion that India is the child's home state

Father asserts that because the child was in India for over seventeen consecutive months at the time of Mother's SAPCR filing, India was the child's home state, and any custody determination must be made by the Indian courts. Father asserts that, contrary to the trial court's finding, the child was not without a home state at the time the SAPCR was filed because India was the child's home state at the time.

While the child lived outside Michigan for seventeen months in India, the Michigan court determined that the child's time in India could not be considered because Father abducted the child to establish home state jurisdiction. The Harris County trial court found India could not have acquired child custody jurisdiction because Father abducted the child in an attempt to establish jurisdiction. While Father accused Mother of abduction, the record supports the trial court's findings that Father abducted the child and Mother worked through appropriate government channels to retrieve the child and return him to the United States. The trial court found that Father "wrongfully abducted and retained the child in violation of the Michigan orders, under which India could not have acquired child custody jurisdiction."

The drafters of the UCCJEA were concerned with parents who abducted a child for the purpose of establishing jurisdiction in a desired state. *See* Commissioners' Office Comment to UCCJEA Section 208 (targeting parents who abduct, secrete, retain, or restrain their children for legal advantage), reprinted in Sampson and Tindall's Texas Family Code Annotated § 152.208 (2011 ed.)). Subject to certain exceptions, the Family Code prevents these parents from receiving any benefit under the UCCJEA. *See, e.g., In re Lewin*, 149 S.W.3d 727, 740 (Tex. App.—Austin 2004, orig. proceeding) ("To allow a parent to deliberately secrete a

17

child to Texas for the purpose of obtaining a child custody determination in the state would make a mockery of the statute.").

Courts simply do not permit parents to kidnap children. The statutory framework of the UCCJEA, as adopted in Chapter 152 of the Family Code, was "particularly designed to deter parents from abducting children for the purpose of obtaining custody awards." *In re Carpenter*, 835 S.W.2d 760, 762 (Tex. App.—Amarillo 1992, no writ). We therefore conclude the trial court did not err in determining that India could not be the child's home state.

## CONCLUSION

The record supports the trial court's findings that the Texas court had jurisdiction to modify the Michigan court's custody order. We hold the court did not err in denying Father's plea to the jurisdiction and overrule Father's sole issue on appeal. Having overruled Father's issue on appeal we affirm the trial court's judgment.

/s/ Jerry Zimmerer
   Justice

Panel consists of Justices Wise, Zimmerer, and Wilson.